UNITED STATES of America

v.

Edward Joseph PEARCE and
Richard Mills.

Crim. No. 72–681.

United States District Court,
E. D. Pennsylvania.

April 2, 1973.

Gilbert J. Scutti, Asst. U. S. Atty., Philadelphia, Pa., for United States.

Warren J. Borish, Philadelphia, Pa., for defendant Pearce.

Edward H. Weis, Asst. Defender, Philadelphia, Pa., for defendant Mills.

## OPINION

LUONGO, District Judge.

Edward Joseph Pearce and Richard Mills are charged with possessing, receiving and concealing a 1972 Chevrolet Chevelle which had been stolen and was moving in interstate commerce, in violation of 18 U.S.C. § 2313. Before the court are motions by both defendants seeking suppression of evidence seized following an allegedly illegal arrest.

At the hearing on the motion to suppress, the government presented testimony establishing the following facts leading up to and surrounding the arrest and search. On August 7, 1972, the FBI office received an anonymous telephone call advising that Edward Joseph Pearce was dealing in counterfeit $50 bills; that he was driving a stolen 1972 gray Chevrolet Chevelle; and that he was living at 508 Snyder Avenue, Philadelphia.

After confirming that 508 Snyder Avenue was an existing address, Special Agent Robert Irvin checked FBI records and ascertained that Pearce had been named in a previous interstate stolen motor vehicle case, but the records indicated that the case had been terminated with no determination that Pearce had been involved in the matter. On August 17, 1972, Special Agents Irvin and Thompson conducted a surveillance at the Snyder Avenue address. They observed Pearce and Mills get into a gray Chevrolet Chevelle and drive it off. The agents followed. The Chevelle stopped a few blocks away on Ritner Street. Pearce, who was driving, exited the car, lifted its hood and began checking the motor, apparently for some malfunction. The agents then approached Pearce and asked him for registration papers for the Chevelle. Pearce showed a temporary registration certificate in the name of Joseph Marcella, 2613 South Carlisle Street. The agents checked the serial number on the temporary certificate against the serial number on the vehicle and observed that one digit of the serial numbers did not match up. At that point, the agents felt that there was

**758**

a possibility that the Chevelle might have been stolen. They checked the serial number on the Chevelle with the National Crime Information Computer, but learned that the vehicle was not listed as stolen. The agents nevertheless locked the Chevelle and asked Pearce and Mills to accompany them to their car. The agents called the Philadelphia Police because of the possibility that the registration card was fraudulent.

Agent Irvin testified that at no time up to and including the time that the police were called did he have any knowledge or information that a federal crime had been committed.

A detective from the Philadelphia Police Department responded to the agents' call, examined the registration card at the scene and transported Pearce and Mills to headquarters for questioning. Agent Thompson followed in the Chevelle. En route, he observed a handgun in the driver's side safety harness above the door. At the police station Agent Irvin learned that Mills had been arrested for homicide in 1967. Before interrogating Mills, Agent Irvin had Mills remove his wooden legs so that he could search for weapons. When the legs were removed, various incriminating documents were found inside.

The question presented by the motion to suppress is whether these defendants were searched incident to a lawful arrest. If not, the fruits of the search must be suppressed.

An FBI agent is empowered, under 18 U.S.C. § 3052, to

" . . . make arrests without warrant for any offense against the United States committed in their presence, or for any felony cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony."

The "reasonable ground" requirement of the statute is equivalent to the "probable cause" requirement of the Fourth Amendment. Henry v. United States, 361 U.S. 98, 100, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); United States v. LaMac-

chio, 362 F.2d 383 (3d Cir.), cert. denied, 385 U.S. 992, 87 S.Ct. 606, 17 L.Ed.2d 453 (1966). The legality of the warrantless arrests in the instant case must be tested by this standard.

Probable cause exists where the facts and circumstances within the knowledge of the arresting officers, and of which they have trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in believing that an offense has been or is being committed and that the person was or is the offender. Henry v. United States, *supra*; Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

When Agents Irvin and Thompson approached the defendants on Ritner Street, the only information they had was a telephone tip from an anonymous caller and some information contained in the FBI files. Since the informant was anonymous, he could not have been known to be reliable, hence one of the essential ingredients for probable cause was missing. Beck v. Ohio, 379 U.S. 89, 91, 96–97, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Holbrook v. United States, 406 F.2d 44, 46 (10th Cir. 1969). See Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Further, the anonymous caller gave no underlying facts or details which would have corroborated his accusation that Pearce had counterfeit bills or that he was driving a stolen car. Compare Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed. 2d 327 (1959). Pearce's prior brush with the law, disclosed in the FBI file, could by no stretch of the imagination amount to any more than an "unsavory reputation," which is to be disregarded surveillance on the day of the arrest and in determining whether probable cause exists. United States v. McNally, 473 F.2d 934 (3d Cir. 1973) (Slip Opinion filed January 15, 1973). The agents' search revealed nothing more than that Pearce was in fact staying at 508 Snyder

Avenue and that he was driving a gray Chevrolet Chevelle. The agents observed nothing to indicate that Pearce was in-involved in any way with counterfeit money or stolen vehicles. There was nothing about Pearce's movements, or the movements of Mills, his passenger, in or about the vehicle, that appeared to be anything but innocent. Their movements were not furtive, and their conduct did not indicate that they were attempting to flee some imagined captor. See Henry v. United States, *supra*. Compare United States v. Squella-Avendano, 447 F.2d 575, 582 (5th Cir.), cert. denied, 404 U.S. 985, 92 S.Ct. 450, 30 L. Ed.2d 369 (1971).

■ The government argues that "the agents had personal knowledge that something was amiss after Pearce produced an obviously bogus registration card." [Brief Contra Motion to Suppress, p. 3] This misses the point. It assumes that the agents had cause or authority to ask for the vehicle registration papers. As has been earlier demonstrated, the agents had no probable cause to believe that a federal crime had been committed, and that defendants had committed it, consequently authority to examine the registration papers cannot be based on probable cause. If it is the government's intention to rely on the provisions of the Motor Vehicle Code of Pennsylvania, 75 P.S. § 1221(b),[1] as has been suggested, that would be unavailing for two reasons. First, the section applies only to peace officers in uniform, which FBI agents are not; and second, the Pennsylvania Supreme Court has held that section of the Motor Vehicle Code unconstitutional. Commonwealth v. Swanger, Pa., 300 A.2d 66 (1973) (Slip Opinion filed January 19, 1973).

■ In a supplemental brief, the government has urged that the "stop and frisk" doctrine enunciated in Terry v.

Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968) and clarified in Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), justifies the agents' approach and investigation in the instant case. I cannot agree. *Terry* sanctions approach and investigation, i. e. "stop," only "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot . . . ." *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884. See also *Id*. at 31–34, 88 S.Ct. 1868 (Harlan, J. concurring), and the search of the outer clothing for weapons, i. e. the "frisk," only where the officer has reason to believe that "the persons with whom he is dealing may be armed and presently dangerous . . . and . . . nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety . . . ." *Id*. at 30, 88 S. Ct. at 1884.

■■ The agents' request here to see the registration papers cannot be legimated on stop and frisk principles. First, they observed no conduct of an unusual nature which would reasonably cause them in their experience to believe that criminal activity might be afoot. Second, they apparently had no reason to fear for their safety, as witness the fact that they made no attempt to "frisk" for weapons until after the defendants were in the police station. Finally, they were not acting on information from an informant with "enough indicia of reliability to justify [their] forcible stop of [defendants]." Adams v. Williams, 407 U.S. at 147, 92 S.Ct. at 1924. The factors stressed by the Court in *Adams* as furnishing the required indicia of reliability of the informant were (1) the informant had supplied information in the past; (2) the informant had approached the police officer in person;

---

1. "§ 1221. Signals and investigations by officers
   *    *    *    *    *
   (b) Any peace officer, who shall be in uniform, and shall exhibit his badge or other sign of authority, shall have the right to stop any vehicle, upon request or signal, for the purpose of inspecting the said vehicle, as to its equipment and operation, or manufacturer's serial number or engine number, and securing of such other information as may be necessary."

and (3) the informant exposed himself to prosecution if the tip was false. It is quite apparent that the informant in the instant case measured up to none of those standards of reliability.

The motion to suppress as to Pearce will be granted.

 The discussion up to this point has been confined to the defendant Pearce. The grant of the motion to suppress as to Pearce requires a similar disposition as to Mills, for the agents had even less cause as to him. At the time the agents stopped Pearce and asked for the registration papers for the vehicle, they had absolutely no information whatsoever about Mills. All they knew was that he was a passenger in a vehicle being driven by Pearce. Since, as noted in the earlier discussion, they lacked sufficient information to believe that Pearce was involved in the crime of possession of a stolen vehicle, *a fortiori,* there was no reasonable cause to believe that the passenger, Mills, was so involved. See United States v. DiRe, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948).

The motion to suppress as to Mills will be granted.