PEOPLE v WALKER

Docket No. 57611. Argued May 4, 1977 (Calendar No. 2).—Decided
    October 24, 1977.

Ulysses Walker was convicted by a jury in Berrien Circuit Court,
    William S. White, J., of possession of heroin. The defendant
    was arrested by police who were acting on an anonymous
    telephone tip that he would be making a trip along a certain
    route to pick up drugs in one of two cars which the caller
    described. The Court of Appeals, McGregor, P. J., and D. E.
    Holbrook and N. J. Kaufman, JJ., reversed and remanded for a
    new trial on ground that seizure of heroin by police when they
    stopped the defendant along the described route violated the
    Fourth Amendment because the police did not have probable
    cause to arrest him and the seizure did not fall within the plain
    view exception (Docket No. 19048). The people appeal. *Held:*

    1. An anonymous tip may be the basis for probable cause to
    make an arrest if the information in the tip is sufficiently
    corroborated by independent sources. Some of the underlying
    circumstances from which the informant concluded that the
    narcotics were where he claimed they were must be disclosed
    and some of the underlying circumstances from which the
    officer concluded that the informant was credible or his infor-
    mation reliable must be shown, something more substantial
    than a casual rumor circulating in the underworld or an
    accusation based merely on general reputation.

    2. The informant's tip in the instant case contained sufficient
    self-verifying detail to warrant an inference that the informant
    obtained his information in a reliable manner. The informant
    revealed where the defendant was going, the illegal purpose of
    the trip, a description of the two automobiles to which he had
    access, the approximate time of his return, the number of
    people with whom he would be traveling, and the address of his
    eventual destination.

    3. Police could reasonably conclude that this was an infor-
    mant whose reliability had been clearly demonstrated after

REFERENCE FOR POINTS IN HEADNOTES
[1–12] 5 Am Jur 2d, Arrest § 46.

several details of the tip were corroborated by independent police work. The police learned that the Oldsmobile automobile described by the informant was registered to a woman living at the specified address and that a bronze Cadillac meeting the description of the other car was in the driveway of that house, and police spotted the Oldsmobile on the specified route at approximately the time the informant stated.

Reversed.

Justice Levin, joined by the Chief Justice, dissented. He wrote:

1. Where the informant is unknown, there is no information regarding his reliability. His reliability cannot reasonably be inferred on verification of innocuous information there is no reason to believe the accused would conceal. Corroboration of innocent details tends to show that the informant is acquainted with the accused, but does not tend to show present criminal activity absent the "track record" of the reliable informant who can tell the police when, without shooting in the dark, there is reason to proceed against the accused. Without a track record there is no way of knowing whether the anonymous tipster is acting on anything more substantial than personal animus or his suspicions—of less, certainly no greater, probity than a police officer's suspicions.

2. Suspicion shared by more than one or any number of officers is not probable cause. Police suspicion bolstered by an anonymous informant's assertion not shown by some evidence of present criminal activity to be other than the product of suspicion has no greater dignity. Suspicion corroborated by suspicion is not probable cause.

3. The corroboration in the instant case of innocent details supplied by the anonymous informant and the unspecified suspicions that Walker dealt in narcotics did not establish the reliability of the anonymous tip that he would on this occasion be returning with a "load of dope". The facts and circumstances known to the police of which they had reasonably trustworthy information were not sufficient to warrant a prudent man in believing that Walker was committing an offense.

4. The United States Supreme Court has announced what the Court regards as a sufficient showing of probable cause in the *confidential* informant situation, where the police have a demonstration of a known informant's reliability, but those opinions do not establish what is sufficient to show probable cause in an *anonymous* informant situation. Absent a record of reliability or other substantial reason to believe the assertions of present criminal activity, there is no thread of criminality

elevating suspicion to probable cause unless further investigation or other information provides some evidence of present criminal activity.

5. Nor can an arrest be made merely because the report is more credible because the accused has been suspected by the police of engaging in the very criminal activity described by the anonymous tipster. Otherwise a person harboring malice or suspicions might harass anyone with a criminal record or suspected by the police who, on nothing more than a telephone call describing him and his anticipated movements, could be arrested. Absent incriminating evidence that substantiates the suspicion or anonymous assertion that the accused is currently engaged in criminal activity he cannot be arrested for the apparent purpose of conducting a search for evidence of criminal activity as an "incident" of a "lawful arrest" on the basis of an anonymous telephone call and substantiation of innocuous details any acquaintance and many strangers could provide.

64 Mich App 138; 235 NW2d 85 (1975) reversed.

OPINION OF THE COURT

1. ARREST—CONSTITUTIONAL LAW—PROBABLE CAUSE—INFORMANTS.

An anonymous tip may be the basis for probable cause to make an arrest if the information in the tip is sufficiently corroborated by independent sources.

2. DRUGS AND NARCOTICS—ARREST—CONSTITUTIONAL LAW—PROBABLE CAUSE—INFORMANTS.

The test for determining when probable cause may be established in a narcotics arrest solely upon the basis of information from an informant is that some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were must be disclosed, and some of the underlying circumstances from which the officer concluded that the informant was credible or his information was reliable must be shown, something more substantial than a casual rumor circulating in the underworld or an accusation based merely on general reputation.

3. DRUGS AND NARCOTICS—ARREST—CONSTITUTIONAL LAW—PROBABLE CAUSE—INFORMANTS.

An informant's tip in the arrest of a defendant for possession of narcotics contained sufficient self-verifying detail to warrant an inference that the informant obtained his information in a reliable manner where the informant revealed where the defendant was going, the illegal purpose of the trip, a description

of the two automobiles to which he had access, the approximate time of his return, the number of people with whom he would be traveling, and the address of his eventual destination.

4. ARREST—CONSTITUTIONAL LAW—PROBABLE CAUSE—INFORMANTS.

One recognized method of establishing the trustworthiness of an informant is that he provided information on past occasions which later proved to be correct upon investigation, but this does not support the conclusion that the informant gained his information in a reliable way.

5. DRUGS AND NARCOTICS—ARREST—CONSTITUTIONAL LAW—PROBABLE CAUSE—INFORMANTS.

Police could reasonably conclude that an anonymous informant's reliability had been clearly demonstrated after several details of the informant's tip were corroborated by independent police work where police learned that one of two automobiles described by the informant as the ones the defendant would be using to transport narcotics was registered to a woman living at a specified address, a car meeting the other description was parked in the driveway of that house, and police spotted one of the cars on the specified route at approximately the time the informant stated.

DISSENTING OPINION BY LEVIN, J.

KAVANAGH, C. J.

6. ARREST—CONSTITUTIONAL LAW—PROBABLE CAUSE—INFORMANTS.

*Suspicion shared by more than one or any number of police officers is not probable cause for an arrest; police suspicion bolstered by an anonymous informant's assertion not shown by some evidence of present criminal activity to be other than the product of suspicion has no greater dignity.*

7. ARREST—CONSTITUTIONAL LAW—PROBABLE CAUSE—INFORMANTS.

*Corroboration of innocent details supplied to police by an anonymous informant and unspecified suspicions that a defendant dealt in narcotics do not establish the reliability of the anonymous tip that the defendant would on the occasion he was arrested be travelling with a load of drugs.*

8. ARREST—CONSTITUTIONAL LAW—PROBABLE CAUSE—INFORMANTS.

*Police seeking an arrest warrant on information supplied by a confidential informant must detail their knowledge of the informant, the underlying information he provided and any other facts and circumstances on which they rely so that the*

*magistrate, independently of the officer's conclusory allegations, can assess whether the informant is reliable and whether he appears to have obtained his information in a reliable manner; however, where the defendant is arrested without a warrant, the inquiry does not concern the contents of an affidavit—there is none—but whether the police officers themselves had information constituting probable cause for an arrest.*

9. ARREST—CONSTITUTIONAL LAW—PROBABLE CAUSE—INFORMANTS.

*Absent a record of reliability of an informant or other substantial reason to believe his assertions of present criminal activity of a defendant, there is no thread of criminality elevating suspicion to probable cause for an arrest unless further investigation or other information provides some evidence of present criminal activity.*

10. ARREST—CONSTITUTIONAL LAW—PROBABLE CAUSE—INFORMANTS.

*Police officers may proceed with an arrest upon the basis of information received from an informer and need not disclose the identity of the informer; however, in order to establish probable cause there must be a showing that the information was something more than a mere suspicion, a tip, or anonymous telephone call, and that it came from a source upon which the officers had a right to rely.*

11. ARREST—CONSTITUTIONAL LAW—PROBABLE CAUSE.

*Requiring probable cause for an arrest assures that a citizen will not suffer unjustified intrusions upon his privacy; simply stated, probable cause requires that there be good reason for an arrest.*

12. ARREST—CONSTITUTIONAL LAW—PROBABLE CAUSE—INFORMANTS.

*An arrest was without probable cause where the police acted on an anonymous tip which set forth innocent facts in support of an allegation of criminal activity and did not reveal the basis of the informant's allegation, corroboration was weak because no criminal activity was observed and only part of the informant's story was verified by the police before the arrest, and police information concerning the suspect's possible prior criminal activities did not substantiate the charge of current criminal activity.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *John A. Smietanka,* Prosecuting Attorney, and *John Jeffrey Long,* Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office (by Michael E. Turner)* for defendant.

FITZGERALD, J. Ulysses Walker was convicted by a jury on May 31, 1973, of possession and control of a controlled substance, heroin, in violation of MCLA 335.153; MSA 18.1123,[1] and was subsequently sentenced to a term of 2-1/2 to 4 years imprisonment. Prior to trial, defendant made a timely motion to quash the information and suppress evidence based on the claim that the police had no probable cause to arrest defendant. The trial court denied defendant's motion, and the Court of Appeals denied defendant's application for interlocutory appeal of this denial. Defendant appealed his conviction to the Court of Appeals as of right. The Court of Appeals reversed defendant's conviction and remanded for a new trial, finding that the seizure of heroin was unlawful because the police did not have probable cause to arrest defendant. 64 Mich App 138; 235 NW2d 85 (1975). We granted leave to appeal limited to the issue of whether the stop and arrest of defendant was unlawful, thereby rendering the evidence found at the scene of the arrest inadmissible. 396 Mich 812 (1976). We reverse the judgment of the Court of Appeals for the reasons stated herein.

FACTS

Defendant was arrested for possession of narcotics at about 1 a.m. on February 28, 1971, by the Benton Township police, who were acting on an anonymous telephone tip. According to police testimony, the informant phoned the Benton Township Police Department at about 8:20 p.m. on February

---

[1] Repealed by 1971 PA 196. *See* MCLA 335.341(4)(a); MSA 18.1070(41)(4)(a).

27, 1971, and requested to speak with Captain Paul Farris. The caller was given a phone number at which Captain Farris could be reached. The informant called Captain Farris, insisted on remaining anonymous, and, according to Farris, told him that:

"Ulysses Walker left town a short time ago going to Detroit to pick up a load of dope, and that he would be driving either a bronze-colored Cadillac four-door with Indiana license plates or a black-over-yellow Oldsmobile four-door with Michigan plates, and that there would be two women in the car with him, and that they would be returning to Benton Harbor in approximately five hours and going to 668 Superior Street in the City of Benton Harbor."

After receiving the anonymous call, Captain Farris learned from the Benton Harbor Police Department that a Lucille Gayten lived at 668 Superior Street, and a LEIN report indicated that a 1969 Oldsmobile with 1970 Michigan plate GKV 275 was registered under the name of Ms. Gayten. Officers drove to 668 Superior Street and saw a bronze-colored Cadillac in the garage but not the Oldsmobile.

Captain Farris testified that after he received the anonymous tip he called Sergeant Lester at the police station, told him of the information he had received concerning defendant, and ordered him to determine which of the two cars were at the Superior Street address and then set up a surveillance to locate the other vehicle coming into Benton Harbor and to stop and make an arrest. At about 1 a.m., Sergeant Spencer and two other officers, who were waiting on the Main Street penetrator in an unmarked police car, spotted a black-over-yellow 1969 Oldsmobile with a

1970 Michigan license plate GKV 275 going west on the I-94 business loop into Benton Harbor. As the police car approached the Oldsmobile, the Oldsmobile switched lanes and then made a left turn about 100 yards down the road. Sergeant Lester testified that at this point, the police thought that they had been spotted by the people in the Oldsmobile so they then turned on the siren and the red flashing lights. The driver of the Oldsmobile testified that the unmarked car did not sound a siren or flash its lights. The police stopped the Oldsmobile by forcing it over to the side of the road. When the three police officers got out of their car the Oldsmobile "lurched" forward another three feet before again stopping.

Sergeant Spencer testified that he drew his gun, told the occupants of the Oldsmobile that they were under arrest, and ordered them all to get out of the car. Officers Spencer and Peters testified that as defendant hurriedly exited from the right rear door, he bent over low and made a quick underhanded "throwing motion". Peters saw a "white powdery substance flying through the wind" and after approaching defendant, saw a strip of white powder on the ground near the right rear tire and patches of white powder on the right rear door of the Oldsmobile. The powder was removed from the road and the car and identified as heroin at trial.

## ISSUE

The decisive issue in this case is whether the police had probable cause to make a valid arrest, thereby rendering the heroin found at the scene of the arrest admissible into evidence against defendant. We hold that an anonymous tip may be the basis for probable cause to make an arrest if the

information in the tip is sufficiently corroborated by independent sources. Since we find that the police had probable cause to make a valid arrest of defendant, we need not address plaintiff's alternative theory that despite the fact that the police, with guns drawn, told the occupants of the stopped vehicle that they were all under arrest, the transaction constituted an investigatory stop, in accordance with *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

The test for determining when probable cause may be established solely upon the basis of information from an informant or upon such information and corroborating facts has been developed in *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964), and *Spinelli v United States,* 393 US 410; 89 S Ct 584; 21 L Ed 2d 637 (1969). In *Aguilar,* the United States Supreme Court held that probable cause for a warrantless arrest is established if the informant's tip meets two requirements: (1) "some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were" must be disclosed, and (2) "some of the underlying circumstances from which the officer concluded that the informant * * * was 'credible' or his information 'reliable'" must be shown. 378 US 108, 114. This two-prong test was further developed in *Spinelli,* where the affiant swore that his informant was reliable, but gave the magistrate no grounds to support his conclusion.

In regard to the first prong of the test, the *Spinelli* Court said that "[i]n the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail so that the magistrate may

know that he is relying on something more sub-
stantial than a casual rumor circulating in the
underworld or an accusation based merely on an
individual's general reputation". 393 US 410, 416.
The Court in *Spinelli* found the detail provided by
the informant in *Draper v United States,* 358 US
307; 79 S Ct 329; 3 L Ed 2d 327 (1959), a "suitable
benchmark". 393 US 410, 416. In *Draper,* the
informant reported that the accused was selling
narcotics and that he would return from Chicago
by train on one of two days with narcotics. The
informant also described Draper and his clothing
and said that he would be carrying a tan zipper
bag and that he habitually walked "real fast". As
the Court explained in *Spinelli,* "[a] magistrate,
when confronted with such detail, could reason-
ably infer that the informant had gained his infor-
mation in a reliable way". 393 US 410, 417.

In the instant case, the anonymous informant
indicated to Captain Farris that defendant had
just driven to Detroit to pick up a "load of dope"
and would return to Benton Harbor in approxi-
mately five hours. Further, the informant revealed
that defendant would be riding in one of two
automobiles, which he described in detail, and
would be riding with two women. Finally, the
caller said that defendant would be going to 668
Superior Street upon his return to Benton Harbor.

We believe that the tip received by Captain
Farris described defendant's criminal venture in
sufficient detail so that the police could reasonably
infer that they were relying on "something more
substantial than a casual rumor" or information
based on "an offhand remark heard at a neighbor-
hood bar". *Spinelli, supra,* 393 US 410, 416, 417.
Indeed, the informant revealed where defendant
was going, the illegal purpose of the trip, a de-

scription of the two automobiles to which he had access, the approximate time of his return, the number of people with whom he would be traveling, and the address of his eventual destination. To be sure, the facts supplied by the anonymous informant in the instant case were substantially more numerous and detailed than those contained in the tip received in *Spinelli*.[2] Accordingly, we hold that, as in *Draper,* the informant's tip in the instant case contained sufficient self-verifying detail to warrant an inference that the informant obtained his information in a reliable manner.

Defendant argues, and the Court of Appeals held, that the fact that the informant in *Draper* had supplied reliable information in the past precludes the drawing of an inference in the instant case that the detailed nature of the tip given to Captain Farris indicated that the information was gained in a reliable way. We find, however, that reliance on this distinguishing fact is misplaced, for the fact that an informant has given reliable information in the past is supportive of the conclusion that he is trustworthy, rather than the conclusion that the informant gained his information in a reliable way. Indeed, there was no evidence in *Draper* as to how the informant obtained his information, and this accounts for the importance which the Court attached to the detailed nature of the tip.

Upon satisfying the first prong of the *Aguilar* test, it is then necessary to turn to the second prong, concerning the credibility or reliability of the informant himself. One recognized method of establishing the trustworthiness of the informant is a disclosure that the informant provided infor-

[2] The tip received in *Spinelli* merely indicated that Spinelli was using two specified telephones and that these phones were being used in gambling operations.

mation on past occasions which later proved to be correct upon investigation. *McCray v Illinois,* 386 US 300; 87 S Ct 1056; 18 L Ed 2d 62 (1967). In the instant case, however, the informant was anonymous, and thus there was no prior experience upon which to base the informant's reliability. In *Spinelli,* the Court explained how the veracity of an informant may be established extrinsically when there is otherwise no basis upon which to establish the informant's veracity:

"If the tip is found inadequate under *Aguilar,* the other allegations which corroborate the information contained in the hearsay report should then be considered. At this stage as well, however, the standards enunciated in *Aguilar* must inform the magistrate's decision. He must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar's* tests without independent corroboration?" 393 US 410, 415.

In the instant case, independent police work corroborated several of the details provided by the anonymous informant. Through independent investigation the police learned that the Oldsmobile described by the informant was registered to a woman living at the specified address on Superior Street. Also, the police found that a bronze Cadillac meeting the description by the informant was in the driveway of that house, and thus focused their surveillance on the Oldsmobile. Further, the police spotted the Oldsmobile registered to the woman living on Superior Street heading west on the I-94 business loop leading into Benton Harbor at approximately the time the informant stated that defendant would be returning from Detroit.

When Captain Farris initially received the anonymous tip, he had no adequate basis to believe

that the information was not a complete fabrication. After several details of the tip were corroborated by independent police work, however, the police could reasonably conclude that this was an informant whose reliability had been clearly demonstrated.

"Once again, *Draper* provides a relevant comparison. Independent police work in that case corroborated much more than one small detail that had been provided by the informant [in *Spinelli*]. * * * It was then apparent that the informant had not been fabricating his report out of whole cloth; since the report was of the sort which in common experience may be recognized as having been obtained in a reliable way, it was perfectly clear that probable cause had been established." *Spinelli, supra,* 393 US 410, 417–418.

In conclusion, we find that the informant's tip in this case, upon being corroborated by independent sources, was sufficient to provide the basis for probable cause to make an arrest. Therefore, we hold that the trial court's denial of defendant's motion to suppress was not in error.

The decision of the Court of Appeals is reversed.

WILLIAMS, COLEMAN, RYAN, and BLAIR MOODY, JR., JJ., concurred with FITZGERALD, J.

LEVIN, J. *(dissenting).* Ulysses Walker was convicted of possession of heroin.[1]

The issue is whether heroin found when he was arrested should be suppressed because the police did not have probable cause to arrest him.

The police acted on (i) information telephoned

[1] MCLA 335.153; MSA 18.1123, repealed by 1971 PA 196, effective April 1, 1972, substituting the provisions of present law. *See* MCLA 335.341 *et seq.;* MSA 18.1070(41) *et seq.*

by an anonymous informant that Walker had left town to pick up a "load of dope" and would be returning in a few hours, (ii) corroboration, as a result of investigation, of details, in themselves innocent, furnished by the informant concerning the means and time of the journey, and (iii) police suspicions that Walker was a dope dealer based on his conviction one year earlier for possession of marijuana and other unspecified information, admittedly insufficient to justify an arrest, that he was peddling narcotics.

The Court of Appeals, reversing the trial court, declared that "the corroborative evidence offered here is essentially neutral and cannot be made to look suspicious by the informant's tip".[2]

This Court, pursuing *Aguilar's*[3] "two-pronged" analysis, concludes that the police were justified, on investigative corroboration of "self-verifying" details furnished by the anonymous informant, in concluding that he had obtained his information in a reliable manner, that he was reliable, and there was probable cause to believe his assertion that Walker was in possession of narcotics.

We would affirm the Court of Appeals decision reversing Walker's conviction.[4]

Where the informant is unknown, there is no information regarding his reliability. His reliability cannot reasonably be inferred on verification of

---

[2] *People v Walker,* 64 Mich App 138, 146; 235 NW2d 85 (1975).

[3] *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964).

[4] The disposition of the Court of Appeals is stated in the last paragraph of its opinion:

"The trial court's denial of defendant's motion to suppress was, therefore, in error. Reversed and remanded for a new trial.[2]

"[2] This holding does not, as defendant requests, require us to order the dismissal of charges against defendant. *People v Burrill,* 391 Mich 124; 214 NW2d 823 (1974)."

*People v Walker,* 64 Mich App 138, 147; 235 NW2d 85 (1975).

innocuous information there is no reason to believe the accused would conceal.

Corroboration of innocent details tends to show that the informant is acquainted with the accused, but does not tend to show present criminal activity absent the "track record"[5] of the reliable informant who can tell the police when, without shooting in the dark, there is reason to proceed against the accused. Without a track record there is no way of knowing whether the anonymous tipster is acting on anything more substantial than personal animus[6] or his suspicions—of less, certainly no greater, probity than a police officer's suspicions.

Suspicion shared by more than one or any number of officers is not probable cause. Police suspicion bolstered by an anonymous informant's assertion not shown by some evidence of present criminal activity to be other than the product of suspicion has no greater dignity. Suspicion corroborated by suspicion is not probable cause.

The corroboration in the instant case of innocent details supplied by the anonymous informant and the unspecified suspicions that Walker dealt in narcotics did not establish the reliability of the anonymous tip that he would on this occasion be returning with a load of dope.[7] The facts and

[5] LaFave, *Probable Cause from Informants: The Effects of Murphy's Law on Fourth Amendment Adjudication*, 1977 U Ill L Forum 1, 5.

[6] *See Norton v Turner*, 427 F Supp 138, 142 (ED Va, 1977), an action against FBI and local law enforcement officers for wrongful entry and search of plaintiff's apartment on an anonymous tip that Patricia Hearst and other fugitives were in the apartment: "It has subsequently been determined that the 'tip' was probably made by a neighbor of the plaintiff with whom Ms. Norton frequently quarreled."

[7] Not only were the details corroborated innocent, but not all the details supplied by the informant were corroborated *before* the arrest. When the police stopped the Oldsmobile they had not corroborated the informant's assertion that it would be going to Detroit and returning to Benton Harbor; the State Police had been asked to watch for this automobile, but the local police had not received any report

circumstances known to the police "of which they had reasonably trustworthy information" were not "sufficient to warrant a prudent man in believing" that Walker "was committing an offense". *Beck v Ohio,* 379 US 89, 91; 85 S Ct 223; 13 L Ed 2d 142 (1964).

I

A person who refused to identify himself telephoned a Benton Township police officer and told him that Walker had "left town a short time ago going to Detroit to pick up a load of dope" and that he would be "returning to Benton Harbor in approximately five hours" and going to 668 Superior Street. "He is driving either a bronze-colored four-door Cadillac with Indiana license plates or a black-over-yellow four-door Oldsmobile with Michigan plates. Two women are with him."

Investigation revealed that Lucille Gayten lived at 668 Superior Street and that a 1969 Oldsmobile with 1970 Michigan plate GKV 275 was registered in her name. A bronze-colored Cadillac was in the garage but not the Oldsmobile.

About five hours after receipt of the tip officers watching for the Oldsmobile saw it going west on the I-94 business loop leading into Benton Harbor. The officers pulled behind the Oldsmobile in their unmarked car. The Oldsmobile changed from the right to the left lane and made a left turn. The right rear window was partially open (it was February) but not in the process of being rolled down.

---

that the Oldsmobile had been sighted. It was possible that the Oldsmobile had come from the north on Highway 196, from the southwest on I-94, from anywhere east of Benton Harbor on I-94, or from within the city itself. Further, the informant's assertion that there would be two women in the Oldsmobile was uncorroborated; actually there were three women and one man in addition to Walker. Finally, Walker had not been observed in the Oldsmobile.

The officers turned on flashers and began sounding a siren and honking their horn. The Oldsmobile was forced off the road approximately 100 feet from the intersection. It lurched forward another three feet before finally coming to rest. Three officers, their weapons drawn, identified themselves as police officers and told the occupants they were under arrest. Three women and two men got out of the car, including Walker who made a throwing motion of a white powdery substance later determined to be heroin.

The officer who received the anonymous tip and ordered the arresting officers to watch for and stop the Oldsmobile and arrest Walker was aware that he had been convicted one year earlier of possession of marijuana and that three months before his arrest, Walker had been under surveillance for peddling narcotics.

## II

The decisions of the United States Supreme Court in *Draper*,[8] *Aguilar, Spinelli*,[9] *Whiteley*[10] and *Harris*[11] "frame but do not entirely solve the problem here presented". *United States v Canieso*, 470 F2d 1224, 1230 (CA 2, 1972).

*Draper* and *Whiteley* considered whether police officers had probable cause to *arrest*. *Aguilar, Spinelli* and *Harris* considered the sufficiency of a showing on affidavit to a magistrate of probable cause for a *search*.

---

[8] *Draper v United States*, 358 US 307; 79 S Ct 329; 3 L Ed 2d 327 (1959).

[9] *Spinelli v United States*, 393 US 410; 81 S Ct 584; 21 L Ed 2d 637 (1969).

[10] *Whiteley v Warden, Wyoming State Penitentiary*, 401 US 560; 91 S Ct 1031; 28 L Ed 2d 306 (1971).

[11] *United States v Harris*, 403 US 573; 91 S Ct 2075; 29 L Ed 2d 723 (1971).

All the cases, except, it would appear, *Whiteley,* concern tips supplied by a confidential informant *known* to the police. In the instant case, the tip was supplied by an anonymous informant *unknown* to the police.

While the ultimate question in *Draper* and the instant case (where the defendants were arrested without a warrant), and in *Aguilar, Spinelli* and *Harris* (concerning search warrants) and in *Whiteley* (arrest on a defective warrant) is the sufficiency of the showing of probable cause,[12] the primary focus in the warrant cases was whether the magistrate had been furnished with adequate information so that he could make an independent judgment.

Two-pronged analysis, developed in *Aguilar* and extended in *Spinelli* in the *confidential* informant situation, obliges police seeking a warrant to detail their knowledge of the informant, the underlying information he provided and any other facts and circumstances on which they rely so that the magistrate, independently of the officer's conclusory allegations, can assess whether the informant is reliable and whether he appears to have obtained his information in a reliable manner.

Where, as here, the defendant is arrested without a warrant the inquiry does not concern the contents of an affidavit—there is none—but whether the officers themselves had information constituting probable cause for an arrest.

In *Aguilar* there was no occasion to discuss the adequacy of the probable cause showing because the affidavit so plainly was conclusory and defi-

---

[12] " * * * the standards applicable to the factual basis supporting the officer's probable-cause assessment at the time of the challenged arrest and search are at least as stringent as the standards applied with respect to the magistrate's assessment." *Whiteley v Warden, Wyoming State Penitentiary, supra,* p 566.

cient in every respect.[13] In *Spinelli* the Court
sought to refine *Aguilar* by elucidating the kind of
information that did *not* and the kind of informa-
tion that *might* provide a magistrate with a basis
for finding that the informant was reliable and his
information was obtained in a reliable manner and
of probable cause but, having concluded that the
showing was inadequate,[14] could not decide what
*would* constitute a sufficient showing of probable
cause. Despite the length and care of the *Spinelli*
analysis, all that it tells us is what is *not* an
adequate showing of probable cause in a *confiden-
tial* informant situation, not what *is* sufficient in
an *anonymous* informant situation.

---

[13] The affidavit stated only that the affiant had "received reliable
information from a credible person and do believe that heroin * * *
and other narcotics * * * are being kept at the above described
premises for the purpose of sale". *Aguilar v Texas, supra,* p 109.

In explaining its conclusion, the Court articulated the "two-
pronged" test which has been the focus of subsequent litigation and
scholarly comment: "[T]he magistrate must be informed of some of
the underlying circumstances from which the informant concluded
that the narcotics were where he claimed they were, and some of the
underlying circumstances from which the officer concluded that the
informant, whose identity need not be disclosed * * * was 'credible' or
his information 'reliable.'" *Id,* p 114.

*See* LaFave, *supra;* Moylan, *Hearsay and Probable Cause: An
Aguilar and* Spinelli *Primer,* 25 Mercer L Rev 741 (1974). *See also*
Current Development, *Probable Cause and the First-Time Informer,*
43 Colo L Rev 357 (1972).

[14] The affidavit stated the FBI had been "informed by a confidential
reliable informant" that Spinelli was operating a handbook and
accepting wagers by means of telephones, the numbers of which were
identified, that he is known to the affiant and to law enforcement
agents "as a bookmaker, an associate of bookmakers, a gambler and
an associate of gamblers"; that the telephones were listed under the
name of Grace P. Hagen, and that Spinelli was seen on four days in
the parking lot of her apartment house and on one occasion entering
her apartment. The Court said:

"Though the affiant swore that his confidant was 'reliable', he
offered the magistrate no reason in support of this conclusion. Per-
haps even more important is the fact that *Aguilar's* other test has
not been satisfied. The tip does not contain a sufficient statement of
the underlying circumstances from which the informer concluded that
Spinelli was running a bookmaking operation." *Spinelli v United
States, supra,* p 416.

In *Whiteley,* where a conclusory affidavit was declared insufficient, the Court concluded that the other information of which the arresting officers were aware did not establish probable cause.

*Draper* and the lead opinion in *Harris* alone show what the Court regards as a sufficient showing of probable cause in the *confidential* informant situation. They can only hint at the standards to be applied in the *anonymous* informant situation.

### III

This Court, relying principally on *Spinelli* and *Draper,* concludes that the requirements of two-pronged analysis have been satisfied because the tip "contained sufficient self-verifying detail to warrant an inference that the informant obtained his information in a reliable manner" and that "[a]fter several details of the tip were corroborated by independent police work * * * the police could reasonably conclude that this was an informant whose reliability had been clearly demonstrated".

This, however, is but one-pronged analysis. Saying that self-verifying detail has been corroborated is but another way of saying that detail deemed self-verifying has also been otherwise verified.[15]

---

[15] "Self-verification" as an alternative to requiring a statement as to the manner in which the informant acquired the information has been subject to repeated criticism:

"[I]f it may be so easily inferred from the affidavit that the informant has himself observed the facts or has them from an actor in the event, no possible harm could come from requiring a statement to that effect, thereby removing the difficult and recurring questions which arise in such situations." *Spinelli v United States, supra,* p 426 (concurring opinion of White, J.).

"Because the self-verifying details approach has little going for it as compared to an explicit statement of the basis of the informant's knowledge, it should be used to uphold an arrest or search only when the details clearly indicate that the informant's basis of knowledge *must* have been sufficient.

*    *    *

" * * * What is needed, then, before details properly may be

In *Draper* (arrest without a warrant) there was information *separate and apart* from the "self-verifying" detail regarding the informant's reliability. In *Draper,* as in *Harris,*[16] the officers were satisfied, based on their dealings with the informant, that he was reliable.

The (pre-*Aguilar*) *Draper* Court concluded, without the intricacies of *Spinelli* analysis,[17] that when

characterized as self-verifying, is that the facts detailed are incriminating facts rather than mere innocent facts. Only in such circumstances may it fairly be assumed that the informant obtained those facts either by personal observation or by another's admission against penal interest." LaFave, *supra,* pp 44, 47–48. *See, also,* Note, *The Informer's Tip as Probable Cause for Search or Arrest,* 54 Cornell L Rev 958, 966 (1969).

[16] The lead opinion, signed without qualification by its author, the Chief Justice, and Justices Black and Blackmun, observing but de-emphasizing two-pronged analysis, declared: "*Aguilar* cannot be read as questioning the 'substantial basis' approach of *Jones [v United States,* 362 US 257; 80 S Ct 725; 4 L Ed 2d 697 (1960)]." The conclusion in *Harris* was that the affidavit there "like that in *Jones,* contained a substantial basis for crediting the hearsay". 403 US 581.

The affiant, a police officer, stated that Harris had a reputation of being a trafficker in non-tax paid distilled spirits and that a stash of illicit whiskey had been located in a house under his control, that he had received information from a person *whom he had interviewed and believed to be "prudent"* and who had recently purchased illicit whiskey from Harris at a described location.

The lead opinion declared that, in contrast with *Spinelli,* the affidavit there before the Court had explained how the informant had come by his information indicating that the information had been gained in a reliable manner and that there was an *"ample factual basis for believing the informant* which, when coupled with affiant's own knowledge of the respondent's background, afforded a basis upon which a magistrate could reasonably issue a warrant. The accusation by the informant was plainly a declaration against interest since it could readily warrant a prosecution and could sustain a conviction against the informant himself". *Id,* pp 579–580.

Justice White, one of the five majority votes, said that he concurred with part III of the opinion treating the informant's statement against penal interest as evidence of his reliability, and that the affidavit considered as a whole was sufficient to support issuance of the warrant.

Justice Stewart joined in part I, which did not specifically advert to the reliability of the informant, and "in the judgment of the Court".

[17] *Draper* preceded *Aguilar* 's articulation of the two-pronged test in response to the utter failure of the *affidavit* in that case to provide any basis for an independent determination of probable cause by the magistrate.

the officer had verified the details provided by his informant—whom he had "always" found to be accurate and reliable—he had reasonable grounds to believe the unverified "critical fact" that Draper was carrying narcotics.

Although *Spinelli* (which found the probable cause showing inadequate) in distinguishing *Draper* (which found it adequate) refers to the detailed report given by the *Draper* informant and the corroboration by the police of all the details except the allegation that Draper was carrying narcotics, *Draper* itself does not contain particularized analysis of the substantiality of the officer's belief that his informant was reliable or of the sufficiency of the detail to establish that the information he supplied had been compiled in a reliable way.

The *Draper* Court's emphasis on the informant's history of accuracy and reliability[18] negatives this Court's apparent conclusion, reached by applying *Spinelli*'s confidential informant analysis in an anonymous informant case, that *Draper* would have been decided the same way if the tip had been anonymous. *Draper* does not hold that the police can arrest a person debarking from a train or plane when someone who knows him well enough to describe his dress, appearance, gait and movements (commonplace, readily verifiable details), telephones ahead his time and place of arrival and charges that he will be carrying contraband. "To hold otherwise would result in a

---

[18] The officer "had 'reasonable grounds' to believe that the remaining unverified bit of [the informant's] information—that Draper would have the heroin with him—was likely true" where he "had *always* found the information given [by the informant] to be *accurate and reliable*" and "had personally verified every facet of the information given him by [the informant] except whether petitioner had accomplished his mission and had the three ounces of heroin on his person or in his bag". *Draper v United States, supra,* pp 309, 313 (emphasis supplied).

completely unacceptable and dangerous precedent. Any unverified and unverifiable tip would result in any passenger being detained and searched merely on a phone call giving a time, a flight and description accompanied by an accusation of criminal activity."[19]

Nor can an arrest be made merely because the report is more credible because the accused has been suspected by the police of engaging in the very criminal activity described by the anonymous tipster. Otherwise a person harboring malice or suspicions might harass anyone with a criminal record or suspected by the police who, on nothing more than a telephone call describing him and his anticipated movements, could be arrested.[20]

Absent incriminating evidence that substantiates the suspicion or anonymous assertion that the accused is currently engaged in criminal activity he cannot be arrested for the apparent purpose of conducting a search for evidence of criminal activity as an "incident" of a "lawful arrest". We have not yet, I hope, reached the point where there is year-round open season on ex-convicts and those whom the police suspect that can be hair-triggered by an anonymous telephone call and substantiation of innocuous details any acquaintance and many strangers could provide.

A judgment that there is evidence of criminality

---

[19] *United States v Bryant,* 406 F Supp 635, 639 (ED Mich, 1975).

[20] A rule permitting such searches would encourage busybodies and paid and unpaid police informants to call in such tips anonymously. Upon corroboration of innocent self-verifying detail an arrest could be made. If contraband or other incriminating evidence is found, the informant may claim credit and his reliability is substantiated for future tips. If nothing is found, the informant does not claim credit and his reputation for reliability remains untarnished.

Such a rule would also encourage prevarication of "anonymous" phone calls to explain investigatory stops and arrests ostensibly upon corroboration of readily observable details purportedly supplied by the unknown and therefore reliably uncontrovertible informant.

may be reasonable where the informant, as in *Draper,* has always supplied accurate and reliable information of criminality or, as in *Harris,*[21] provides information against his penal interest. Absent such a record of reliability or other substantial reason to believe the assertions of present criminal activity, there is no thread of criminality elevating suspicion to probable cause unless further investigation or other information provides some evidence of present criminal activity.

*Draper* cannot properly be invoked in this case where there is no evidence whatsoever of the accuracy and reliability of the informant.

## IV

The inherent unreliability of an anonymous informant distinguishes confidential informant cases like *Draper* from this case. The analysis appropriate to resolution of the question whether there was probable cause for an arrest in this case is to be found upon examination of other anonymous informant cases.

In *Whiteley* a business establishment was broken into. The sheriff "acting on a tip"[22] signed a complaint charging the accused and another person with committing the offense. A bulletin was put out on the radio which described the two suspects and the automobile in which they probably would be riding. They were arrested the next day. Although their car matched the car described in the radio bulletin and the accused was known to the sheriff as a person who committed such offenses, the Court concluded that there was not sufficient information to justify an arrest.

---

[21] Four justices subscribed to this view. *See* fn 16, *supra.*

[22] *Whiteley v Warden, Wyoming State Penitentiary, supra,* p 562.

The Court declared that while resort may be had to information gathered by the arresting officers where the information supplied by the informant is inadequate, "the additional information acquired by the arresting officers must in some sense be corroborative of the informer's tip that the arrestees *committed the felony* or, as in *Draper* itself, were in the process of committing the felony" (emphasis supplied).[23] Since "the arresting officer was not himself possessed of any factual data tending to corroborate the informer's tip that Daley and Whiteley *committed the crime*" (emphasis supplied)[24] he did not have probable cause to arrest.

The emphasis on corroboration of the asserted criminality finds expression and application in the decisions of Federal and state courts which have considered the question in the anonymous informant context.

In *Canieso* the Bureau of Narcotics and Dangerous Drugs obtained information from an informant that a Philippine diplomat would be carrying 20 kilograms of heroin in two blue plastic suitcases from southeast Asia to New York City and that he would be traveling with a Chinese national. Agents observed the two suspects, seated across an airplane aisle, travel halfway around the world exchanging glances but not recognition, and, after the diplomat had cleared his luggage at Kennedy Airport without customs inspection, on signal from the diplomat get into the same taxicab and travel to a Manhattan hotel. The United States Court of Appeals for the Second Circuit assumed, *arguendo,* despite ample corroboration of innocent details, that the tip failed to pass either prong of the

---

[23] *Id,* p 567.

[24] *Id,* p 568.

*Aguilar/Spinelli* test. Stressing the culprits' stud-
ied avoidance of each other on the airplane and
recognition after the suitcases had cleared customs
the court declared that "the *observation of acts as
suspicious as those* in this case affords a basis for
probable cause far more solid than a routine reci-
tation meeting the tests of *Aguilar*" (emphasis
supplied).[25] The court said that where a tip, in
itself insufficient, generates "police investigation
and this has developed significant corroboration or
other '*probative indications of criminal activity*
along the lines suggested by the informant'" it
"may be used to give such additional color as is
needed to elevate the information acquired by
police observation above the floor required for
probable cause".[26]

The United States Court of Appeals for the
Sixth Circuit sustained a search where the police
corroborated by surveillance that, as the infor-
mant had advised, the defendant was a black man
with a wide-brimmed hat who drove a Pontiac
Grand Prix and verified that his first name was
Cleveland, and had observed at a distance two
transactions between the defendant and other per-
sons in a neighborhood where narcotics transac-
tions occurred and saw him deposit something
with a white cloth cover in the trunk of his car
after they said they thought he had spotted them.
This, in the view of the majority "was a highly
suspicious circumstance".[27] Judge McCree agreed
with the analysis but took a different view of the
facts. He observed in dissent that the officers were
not in uniform and expressed his opinion that the
transfer of the article to the trunk was neither a

---

[25] *United States v Canieso,* 470 F2d 1224, 1231 (CA 2, 1972).

[26] *Id.*

[27] *United States v Edmond,* 548 F2d 1256, 1259 (CA 6, 1977).

criminal act nor inherently suspicious. He agreed with the majority "that an otherwise insufficient tip can be augmented to the point of affording probable cause by police observation which might verify the information provided by the tip. This verification may, in some cases, satisfy both requirements: that the information was obtained in a reliable way and that the informer was trustworthy. But when a tip is received from a completely *unknown* source, there must be some *independent verification of the fact that criminal activity has occurred*" (emphasis supplied).[28]

The United States Court of Appeals for the Ninth Circuit ruled that a tip from an apparently anonymous informant "that a vehicle of a described make with an identified license number will be proceeding toward Los Angeles from El Centro at a certain time is *information that could be readily obtained by any bystander observing the vehicle on the road* from El Centro to Los Angeles or, as in *Spinelli,* that 'could easily have been obtained from an offhand remark heard at a neighborhood bar.' "[29] In holding a search invalid, the court said:

"Nothing about the described features of the car or its direction *points to anything suspicious, let alone criminal.* That a vehicle matching the description was spotted along a highway from El Centro in the general direction of Los Angeles *corroborates nothing except, possibly, the ability of the informant accurately to relay what he has seen or what he has overheard."* [30]

The court contrasted the "few innocuous details"

---

[28] *Id,* p 1260.

[29] *United States v Larkin,* 510 F2d 13, 15 (CA 9, 1974). The court said that the tip had been received "from an informant whose reliability was not proved and the dependability of whose information was not established". *Id,* p 14.

[30] *Id,* p 15.

with the details in another case which "were themselves suspicious".[31]

The United States Court of Appeals for the Fifth Circuit concluded that there was probable cause "based upon the specific detailed information of the [anonymous] informant's reports, in addition to the agents' observations of the appellants' activities *indicating criminal conduct*".[32]

In holding that officers did not have probable cause to arrest defendant on deplaning in Detroit, the United States District Court declared that *Draper* was "clearly distinguishable" because the informant in that case "had, from past experience, proved to be reliable to the satisfaction of the police". Recognizing that a tip from an unknown informant may be corroborated by other information, the court declared that "in every instance examined, the later information which corroborated the tip was substantial and was of a nature which might reasonably lead to the conclusion that an *illegal activity was ongoing*".[33]

Another judge of the same court declared that there was no probable cause where the officers had observed nothing that was "inconsistent with com-

---

[31] *Id.*

[32] An informant had described two persons and alleged they were in route from Chicago to El Paso in a described automobile to procure heroin. Agents located the suspects and they were placed under surveillance. The suspects made telephone calls to the west side of Chicago, "an area where problems with narcotics are prevalent". The court described in some detail the movements of the suspects from one motel to another, their frequent changes of vehicles and other details which in addition to corroborating "the specific details of the informer's report * * * indicat[ed] possible criminal conduct. During the surveillance previously described the agents observed that the suspects were simply not conducting themselves in the manner of typical tourists or businessmen". *United States v Horton,* 488 F2d 374, 377, 379 (CA 5, 1974).

[33] Narcotics officers received a tip that the defendant, whose dress and appearance was described in some detail, would be arriving at Detroit Metropolitan Airport on a 3:45 p.m. flight from Kansas City and that she would be carrying narcotics. *United States v Bryant, supra,* p 638.

pletely innocent behavior. There was nothing to
suggest that the defendant was engaged in any
*criminal conduct*".[34]

The Texas Court of Criminal Appeals in a case
where the police received an anonymous tip that
15 minutes earlier Alfred L. "Sonny" Truitt, Jr.,
"was enroute from Dallas to Greenville with ap-
proximately ten pounds of marihuana in his gold
Firebird automobile," and officers dispatched to
intercept the automobile observed a gold Firebird
slow and leave the expressway and stopped it,
distinguished *Draper* on the ground that "the
informant was *completely anonymous* and not
shown to be credible. To allow the informant's
brief conversation to constitute probable cause
would be in effect allowing it to serve as the
'underlying circumstance' for determining his ve-
racity" (emphasis supplied).[35] Citing *Whiteley,* the
court declared that "the additional information
acquired by the arresting officers must in some
sense be corroborative of the informer's tip that

---

[34] Narcotics agents received a physical description of Miles and a
tip from an anonymous informant that he would be returning to
Detroit from Los Angeles with a load of heroin. Miles was detained
when he deplaned because he matched the description and arrested
when he produced identification indicating that his name was Miles.
*United States v Miles,* 425 F Supp 1256, 1259 (ED Mich, 1977).

*Similarly, see United States v Pearce,* 356 F Supp 756 (ED Pa,
1973). The FBI received an anonymous telephone call advising that
Pearce was dealing in counterfeit $50 bills, was driving a stolen 1972
grey Chevelle and was living at a Philadelphia address. Pearce was
observed getting into such an automobile at that address. The FBI
was aware that Pearce had been named in a stolen motor vehicle case
but the case had been terminated with no determination that he was
involved. In holding that there was no probable cause the court
declared "[t]here was nothing about Pearce's movements, or the
movements of Miles, his passenger, in or about the vehicle, that
appeared to be anything but innocent. Their movements were not
furtive, and their conduct did not indicate that they were attempting
to flee some imagined captor". *Id,* p 759.

[35] *Truitt v State,* 505 SW2d 594, 595, 597 (Tex Cr App, 1974).

the arrestee committed the felony, or was in the process of committing the felony".[36]

The Colorado Supreme Court declared that there was no probable cause for an arrest where the police received a number of telephone calls from unknown informants regarding the activities of Loretta Ann and Bobby Joe Williams. One caller said that Loretta Ann was making trips to Texas to obtain heroin, the other related that she would be returning from Texas that evening and would be met by Bobby Joe. The officers had no prior communication with the informants and "had had no independent corroboration that a crime was in fact being committed. Nevertheless, acting on this information, they proceeded to the airport and arrested [Loretta Ann] after she arrived at the airport and was met by [Bobby Joe]." The court said:

"The information imparted by [the anonymous informants] lacked the detail which would clearly manifest its reliability. Finally, the corroborating facts gathered by the officers prior to arrest *confirmed only innocent incidents of the tip, i.e.,* that [Loretta Ann] was on a flight from El Paso and that Bobby Joe Williams was awaiting her arrival. The officers had no independent information that either [Loretta Ann] or Bobby Joe Williams was involved in *criminal activity* apart from these anonymous telephone calls."[37]

Rhode Island police received an anonymous tip that "a tall, white male hitchhiker, who was dressed in a khaki jacket, dungarees and a ski-type toque, had just alighted from [the informant's] automobile and could be found hitchhiking on

---

[36] *Id,* pp 597–598.

[37] *People v Williams,* 186 Colo 72, 74–75; 525 P2d 463, 464–465 (1974).

Tower Hill Road at the intersection of Routes 1 and 138. [The informant] further advised that he believed the described person possessed marijuana and possibly other drugs".[38] Shortly thereafter the hitchhiker was arrested. The state claimed that the tip had been corroborated because "a person who precisely fitted the tipster's description as to appearance, attire and activity had been seen at the time when and at the place where the informer had advised that such a person would be found".[39] In holding that there was no probable cause for an arrest the court distinguished *Draper,* saying that the informant in that case was "a special employee of the Bureau of Narcotics who had previously furnished reliable information regarding narcotics violations; in this case it came from an unidentified source who had not established his reliability and who, although he expressed a 'belief' that defendant possessed narcotics, did not furnish the police with any basis, support or underlying reason for that belief":

"For aught they knew his reported 'belief' was no more than a baseless suspicion or spiteful prank. * * *

"In sum, what was relayed to the arresting officer concerning defendant's appearance and where he would be found, while accurate, was insufficient as a basis for an arrest unless accompanied by 'reasonably trustworthy information' placing him in *criminal circumstances,* and in that aspect the knowledge supplied the arresting officer was deficient."[40]

Other state courts have declared that where the officer's information regarding the reliability of a confidential informant is inadequate, information obtained as a result of further investigation, as-

---

[38] *State v Soroka,* 112 RI 392, 393–394; 311 A2d 45, 46 (1973).

[39] *Id,* p 395.

[40] *Id,* pp 396–397.

sertedly corroborative of the tip, is insufficient where it "related only to innocent activity",[41] or where the "police observed nothing that could be described as furtive or suspicious in any of this conduct."[42]

## V

This Court has ruled that the police may not act on an anonymous tip. In *People v Charles D Walker,* 385 Mich 565; 189 NW2d 234 (1971), the police, in their unmarked automobile, cut in front of defendant's automobile after it left the expressway and entered Grand Rapids. The police jumped out with guns drawn, arrested the occupants and seized heroin. At the hearing, the officer was reluctant to give any information but did say that the police had received information about "this Pontiac" over the telephone and had information on the driver "dating back some time". This Court said:

"From both the Michigan and Federal cases, it is clear that while police officers may proceed upon the basis of information received from an informer and need not disclose the identity of the informer, in order to establish probable cause there must be a showing that the *information was something more than a mere suspicion, a tip, or anonymous telephone call, and that it came from a source upon which the officers had a right to rely." Id,* p 575 (emphasis supplied).

Similarly, see *People v Guertins,* 224 Mich 8, 10; 194 NW 561 (1923), declaring that "an officer has not the right to arrest a person without a warrant and upon information which is given anonymously," and *People v Zeigler,* 358 Mich 355, 360;

---

[41] *Garner v State,* 314 A2d 908, 911 (Del, 1973).

[42] *Carson v State,* 326 NE2d 624, 625 (Ind App, 1975).

100 NW2d 456 (1960): "There was no other information, free from the infirmity of being anonymous * * * ."

Requiring probable cause assures that a citizen will not suffer unjustified intrusions upon his privacy. Simply stated, probable cause requires that there be good reason for an arrest. In the instant case the police acted on an anonymous tip setting forth innocent facts in support of an allegation of criminal activity. The tip did not reveal the basis of the informant's allegation and therefore we do not know whether his information was based on personal observation, a report of a person he believed to be reliable or mere rumor. Since the informant was anonymous there is no way of substantiating his personal reliability. The corroboration was weak; no criminal activity was observed, only part of the story related by the informant was verified.[43] The additional information in the possession of the police (defendant's marijuana conviction and the earlier surveillance for reasons unspecified and with a result not disclosed other than that there was no probable cause for arrest), did not substantiate the charge of current criminal activity. This amalgam of rumor, unsubstantiated allegation and unspecified suspicion does not rise to the level of probable cause. It operated in this case not as a reason for an arrest but as an excuse.[44]

Clearly there was an arrest[45] and just as clearly

[43] See fn 7, supra.

[44] A tip from an anonymous informer may aid the police in narrowing the search for suspects. See People v Wilson, 8 Mich App 651, 658; 155 NW2d 210 (1976).

[45] In People v Gonzales, 356 Mich 247, 253; 97 NW2d 16 (1959), this Court adopted the following definition of arrest:

" 'An arrest is the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody and subjects

the arrest was without probable cause.[46] The fruits of the arrest, the evidence that Walker was in possession of narcotics, should, accordingly, be suppressed.[47]

the person arrested to the actual control and will of the person making the arrest. The act relied upon as constituting an arrest must have been performed with the intent to effect an arrest and must have been so understood by the party arrested.' 4 Am Jur, Arrest, § 2."

[46] The people contend alternatively that this was an investigatory stop. *Adams v Williams,* 407 US 143; 92 S Ct 1921; 32 L Ed 2d 612 (1972); *People v Whalen,* 390 Mich 672; 213 NW2d 116 (1973). *See also United States v Brignoni-Ponce,* 422 US 873; 95 S· Ct 2574; 45 L Ed 2d 607 (1975).

While "[t]he detention of a person need not be accompanied by formal words of arrest or stationhouse booking in order to constitute an 'arrest' requiring probable cause under the Fourth Amendment," *United States v Brunson,* 549 F2d 348, 357 (CA 5, 1977), citing *Davis v Mississippi,* 394 US 721, 727; 89 S Ct 1394; 22 L Ed 2d 676 (1969), in this case there were formal words of arrest. The officers' actions—forcing the Oldsmobile off the road and jumping out with drawn guns including a rifle or sawed-off shotgun—cannot be described as a "modest" intrusion. *United States v Brignoni-Ponce, supra,* p 883.

In *United States v Strickler,* 490 F2d 378, 380 (CA 9, 1974), two squad cars moved directly in front of and behind a Cadillac, a third drew along side it and the patrolman in the passenger seat pointed a gun at the suspects ordering them to raise their hands. This, said the court, was not an investigatory stop:

"[W]e simply cannot equate an armed approach to a surrounded vehicle whose occupants have been commanded to raise their hands with the 'brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information' which was authorized in *[Adams v] Williams* [407 US 143, 146; 92 S Ct 1921; 32 L Ed 2d 612 (1972)]."

*Similarly, see, United States v Larkin, supra,* p 14, n 1; *United States v Birdsong,* 446 F2d 325 (CA 6, 1971) (appellant's arrest was complete when officers ordered him out of his car, surrounded him and removed the keys from his car's ignition); *United States v Lampkin,* 464 F2d 1093 (CA 3, 1972) (arrest completed at the instant agents approached defendant on foot with guns drawn, halted him and identified themselves); *United States v Ramos-Zaragosa,* 516 F2d 141, 144 (CA 9, 1975):

"The arrest was completed when the appellant and his passenger complied with the order to get out of the pickup. The encounter of the agents and the appellant and his passenger was an arrest, as opposed to an investigatory stop, because the agents at gun point, under circumstances not suggesting fears for their personal safety, ordered the appellant and his passenger to stop and put up their hands."

[47] *Brown v Illinois,* 422 US 590; 95 S Ct 2254; 45 L Ed 2d 416 (1975); *People v Charles D Walker,* 385 Mich 565; 189 NW2d 234 (1971); *Garner v State, supra.*

We would affirm the Court of Appeals and remand to the trial court.

Kavanagh, C. J., concurred with Levin, J.