## The People v. Albert C. Lange.

*Criminal   law—Embezzlement—Evidence—Conduct   of   counsel—*
*Jurors—Challenge for cause.*

1. The exemption of justices of the peace from jury duty is a
   privilege personal to the jurors, and not the subject of chal-
   lenge for cause.

2. On the trial of a book-keeper for embezzlement, a clerk of his
   employer, who had charge of the employer's books, refused to
   produce them, and afterwards testified that during his absence
   for a few moments from the room where they were kept they
   had disappeared from their accustomed place in the vault.
   The employer, who had left the city where the trial was being
   held to avoid testifying as a witness in the case, on being
   informed of the situation, sent instructions to the clerk not to
   produce the books, and some days afterwards the clerk, on
   being called as a witness, testified that he had received a tele-
   gram from his employer discharging him, and, in answer to a
   question by the prosecution as to what search he had made for
   the books, answered that he could not find them in the vault,
   but that he had made no inquiry of anybody, not even of his
   employer's attorney, who was present, and apparently directing
   the affair in the interest of the employer. And it is held that
   the loss of the books was not sufficiently proven, and that their
   disappearance occurred under such suspicious circumstances as
   to render parol evidence of their contents incompetent.

3. A question which assumes the existence of a fact not proven is
   objectionable.

4. It is the duty of trial courts to keep attorneys, both for the
   people and respondent, within the boundaries of legitimate argu-
   ment, and to promptly check either when they exceed it.[1]

5. Language of a prosecuting attorney in his argument to the jury,
   based upon the theory that the prosecution had made out a
   case of probable guilt, and that the burden of proof was
   then shifted upon the respondent to overcome it, is objection-
   able.

Exceptions before judgment from Muskegon.  (Dicker-

[1]See foot-note to *People v. Cahoon*, 88 Mich. 456.

man, J.)   Argued February 10, 1892.   Decided March 4, 1892.

Respondent was convicted of embezzlement.   Conviction reversed, and new trial ordered.   The facts are stated in the opinion.

*Smith, Nims, Hoyt & Erwin* (*F. W. Cook* and *C. W. Sessions,* of counsel), for respondent.

*A. A. Ellis,* Attorney General, and *W. J. Turner,* Prosecuting Attorney (*Nelson DeLong,* of counsel), for the people.

GRANT, J.   The respondent was convicted of embezzlement under an information containing five counts, covering a period of six months each, while in the employ of one Lyman G. Mason, as his clerk and book-keeper.

We will consider the questions raised, stating in connection therewith so much of the record as is necessary to their proper understanding.

1. Two jurors were challenged as incompetent because they were justices of the peace.   This question has been disposed of at the present term of Court, and such jurors held competent.[1]   The exemption is a privilege personal to the jurors, and not the subject of challenge for cause.

2. After the arrest and arraignment of the respondent, he apparently made all due efforts to compel the complaining witness, Mason, to produce his books of account for the examination and inspection of himself and his attorneys, in order that they might prepare for his defense.   In this he did not succeed; and, after long delay, he was placed upon trial without having had

---

See *People v. Rawn, ante,* 377.

access to the books, and in the absence of Mason. The trial was fixed for Monday morning. The prosecution took no steps to subpœna Mason until that morning. Mason knew the time fixed. He left Muskegon at 3 o'clock P. M. the day previous, and went to Chicago. He was a material witness for the prosecution to prove, not only the capacity in which he employed respondent, but also to establish the crime; and, if the charge was untrue, he was a material witness for the defense. It is evident that for some reason, undisclosed by this record, Mason did not wish to appear as a witness upon the trial, nor to have his books produced in evidence. The prosecution and the defense both appeared to desire his presence. Each charged the responsibility for his absence upon the other. There is nothing in the record to show whether the fault lay with either, or entirely with Mr. Mason. At the very commencement of the trial, defendant's counsel gave notice that they should insist on the production of Mason, whose name was indorsed upon the information. The trial was continued several days to enable the prosecution to obtain him. The prosecuting attorney, Mason's clerk, and his attorney were in correspondence with Mason, both by telegram and letter. Towards the close of the case the defense called the prosecuting attorney as a witness, and asked him to produce the correspondence between himself and Mason, which he declined to do. One Bigelow was the clerk of Mason at the time of the trial, and had charge of his books. Hs was served with a *subpœna duces tecum* for their production. He refused, and was at first held to be in contempt for so doing. Afterwards he testified that during a few moments' absence from the room the books desired disappeared from their accustomed place in the vault. Meanwhile, some one had communicated to Mason

the situation, and he sent instructions to Bigelow not to produce the books. The trial began December 1. December 13, Bigelow was again called, and testified that his employment for Mr. Mason had ceased, and that he had received from Mason a telegram discharging him. Bigelow was then questioned by the prosecution as to what search he had made for the books. He said he could not find them in the vault; but he had made no inquiry of anybody,—not even of Mason's attorney, who was there, and apparently directing the affair in the interest of Mason. This is all the evidence of the loss of the books. The prosecution then introduced parol evidence of their contents. This was incompetent. Their loss was not sufficiently proven, and their disappearance occurred under such suspicious circumstances as to render parol evidence of their contents incompetent.

3. The respondent and his two brothers had an interview with Mr. Mason in one of his offices. Bigelow was in an adjoining room, but heard not a word of their conversation. Mason obtained from the witness a paper which he (witness) had prepared, "purporting to show the irregularity of shortages or misappropriations of money." Mason took this into the room where the respondent and his brothers were. There was no evidence that the statement was shown respondent, or that its contents were read to him. Mr. Bigelow was asked: "As they finished the examination of that paper before they left the office, didn't you hear one of the brothers of the defendant say, 'Well, we will have to fix that up?'" To which he answered, "I heard one of them make a remark." Whatever this remark was, it was not made in the presence of the respondent. Bigelow was then permitted to testify to the contents of that paper, which was among those that had disappeared, as above stated. It needs no argument to show the incompetency

of this testimony. The question was also objectionable because it assumed a fact not proven.

4. Complaint is made of the intemperate language used by counsel for the people in his argument to the jury, and at other times during the trial. I deem it necessary to mention but one. It was made in the closing argument to the jury, and is as follows:

"Mr. Cook tells you,—he makes a long argument to you about the injustice of having this case presented with only half of the testimony, and he assumes that if it had all been here,—if the books had been here,—there would have been something else to do. Now, on the contrary, we have to say it laid with them to show,—if we have introduced testimony here to show that probably their client will be guilty, it lays with them to overcome it. Gentlemen, what are they here for? For the purpose of stifling justice; for the purpose of leaving testimony out of the case; and for the purpose of presenting to you just as little of this case as they can present, or as can be presented on this record, and then say that, because we haven't produced that, we ought to produce—"

Counsel at this point was interrupted by the counsel for the respondent, and exception taken. Counsel for the people then proceeded to use language more intemperate than the above. The use of such language has been frequently condemned by this Court, and new trials granted in consequence. There is no occasion for resort to such language. It does not tend to reach justice, the true object of every lawsuit. If language had been used in behalf of the respondent which might be considered a just provocation for the above, the record does not disclose it. It is the duty of trial courts to keep attorneys, both for the people and respondent, within the boundaries of legitimate argument, and to promptly check either when they exceed it.

But this language was objectionable for another reason.

It was based upon •the theory that the prosecution had made out a case of probable guilt, and that the burden of proof was then shifted upon the defendant to overcome it.

Conviction reversed, and a new trial ordered. ·

The other Justices concurred.