PEOPLE v NABERS

Docket No. 44136. Submitted June 6, 1980, at Detroit.—Decided February 3, 1981. Leave to appeal applied for.

Shon V. Nabers was convicted of two counts of armed robbery

REFERENCES FOR POINTS IN HEADNOTES

[1-5, 20] 29 Am Jur 2d, Evidence §§ 321-326, 333.

Admissibility, under Rule 404(b) of the Federal Rules of Evidence, of evidence of other crimes, wrongs, or acts similar to offense charged to show preparation or plan. 47 ALR Fed 781.

[2, 4, 5] 29 Am Jur 2d, Evidence §§ 251-257, 260.

[3] 29 Am Jur 2d, Evidence § 332.

Admissibility of evidence as to other offense as affected by defendant's acquittal of that offense. 86 ALR2d 1132.

[5] 29 Am Jur 2d, Evidence § 327.

[6] 29 Am Jur 2d, Evidence § 125.

75 Am Jur 2d, Trial § 194.

[7, 15] 5 Am Jur 2d, Appeal and Error §§ 776-778.

[8, 9] 75 Am Jur 2d, Trial §§ 237, 240, 242.

Violation of federal constitutional rule (Griffin v California) prohibiting adverse comment by prosecutor or court upon accused's failure to testify, as constituting reversible or harmless error. 24 ALR3d 1093.

[9] 75 Am Jur 2d, Trial § 317.

[10] 4 Am Jur 2d, Appeal and Error §§ 76, 268.

Formal requirements of judgment or order as regards appealability. 73 ALR2d 250.

[11, 12] 5 Am Jur 2d, Arrest §§ 24, 25, 44, 48.

What constitutes probably cause for arrest—Supreme Court cases. 28 L Ed 2d 978.

[12] 5 Am Jur 2d, Arrest § 45.

[13-15] 68 Am Jur 2d, Searches and Seizures §§ 2, 4, 37, 92-98.

[14, 15] 29 Am Jur 2d, Evidence §§ 415, 425-427.

"Fruit of the poisionous tree" doctrine excluding evidence derived from information gained in illegal search. 43 ALR3d 385.

Modern status of rule governing admissibility of evidence obtained by unlawful search and seizure. 50 ALR2d 531.

[16] 68 Am Jur 2d, Searches and Seizures § 65.

Propriety of considering hearsay or other incompetent evidence in establishing probable cause for issuance of search warrant. 10 ALR3d 359.

[17, 18] 5 Am Jur 2d, Arrest § 46.

and one count of possession of a firearm during the commission of a felony and was sentenced to prison, Wayne Circuit Court, Myron H. Wahls, J. He appeals, alleging that the trial court erred in admitting similar-acts evidence, in not balancing on the record the probative value of the similar-acts evidence against is prejudicial impact, in instructing the jury regarding the similar-acts evidence, in allowing the prosecution to call on defendant to explain certain evidence, in allowing the introduction of evidence obtained incident to an illegal arrest and pursuant to an invalid search warrant, and in failing to properly rule on defendant's motion to suppress evidence of his prior criminal record. *Held:*

1. The similar-acts evidence was properly admitted. The prosecution met its burden of proving that defendant committed the other act, there was sufficient similarity in the modi operandi of the robberies to allow the similar-acts evidence to be considered by the jury, and the similar-acts evidence was material to a determination of defendant's identity.

2. The trial court did not err in failing to give its reasons *sua sponte* on the record for allowing similar-acts evidence to be admitted.

3. The trial court did not err in instructing the jury on the use of similar-acts evidence.

4. Allowing the prosecutor to comment regarding defendant's failure to explain certain elements of his alibi constituted error, but such error was harmless. In addition, the trial court properly cautioned the jury regarding defendant's absolute right not to testify or prove his innocence in any manner.

5. Defendant's arrest was illegal, and the introduction of evidence seized incident to the arrest constituted error.

6. The warrant which authorized the search of the house in which defendant was arrested was invalid, and any evidence obtained pursuant to the warrant was tainted. The admission of such evidence constituted error.

7. The trial court failed to exercise its discretion on the question of the admissibility of evidence of prior convictions of defendant and a prosecution witness raised on motion. By leaving the decision whether or not to admit the evidence to the parties, the trial court abrogated its discretion, thereby committing error.

8. The trial court did not abuse its discretion in rendering certain other evidentiary rulings.

Reversed and remanded.

What constitutes probably cause for arrest—Supreme Court cases. 28 L Ed 2d 978.

[19] 29 Am Jur 2d, Evidence § 546.

1. Criminal Law — Similar-Acts Evidence — Rules of Evidence.

Evidence which reveals a defendant's other bad acts or crimes is admissible upon a showing of substantial evidence that the defendant committed the other acts, special circumstances surrounding the acts which tend to establish proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing the act, knowledge, identity, or absence of mistake or accident where material, and the materiality of such special circumstances to a determination of the defendant's guilt of the charged offense (MRE 404[b]).

2. Criminal Law — Similar-Acts Evidence — Probative Value — Rules of Evidence.

A trial court in a criminal case, upon determining that certain other-acts evidence is probative, must weigh, prior to its admission, its probative value against the possibility of any resultant unfair prejudice to a defendant (MRE 403, 404[b]).

3. Criminal Law — Similar-Acts Evidence — Failure to Convict.

Failure to convict a defendant of a similar act on a prior occasion does not preclude introduction of evidence of the act at a subsequent trial, but, to the extent that such failure reflects on the accuracy of the averment that a defendant committed the act, the defendant should be entitled to show that a jury determined that he did not commit the act or that the jury was unable to come to a conclusion.

4. Criminal Law — Similar-Acts Evidence — Courts.

A trial court, where requested by a defendant or defense counsel, should explain on the record how it reached a determination that the probative value of similar-acts evidence outweighed its prejudicial effect, but, absent such request, failure by a trial court to explain its rationale should not constitute error.

5. Criminal Law — Courts — Witnesses — Impeachment — Similar-Acts Evidence — Rules of Evidence.

A trial court must determine that the probative value of evidence that a witness has been convicted of a crime outweighs its prejudicial effect and articulate on the record the factors which it considered in making its determination prior to admitting such evidence for the purpose of attacking the credibility of the witness where the evidence is elicited from the witness or is established by public record during cross-examination (MRE 609[a][2]).

6. PROSECUTING ATTORNEYS — ARGUMENTS OF PROSECUTOR — BURDEN OF PROOF — ERROR.

An argument by a prosecutor which calls upon a defendant to explain something may tend to shift the burden of proof and result in error.

7. APPEAL — HARMLESS ERROR — TEST.

The test for determining harmless error on appeal is whether an error is so offensive to the maintenance of sound judicial process that it may never be considered harmless and, if not, whether the error was harmless beyond a reasonable doubt.

8. PROSECUTING ATTORNEYS — COMMENTS ON SILENCE OF ACCUSED — APPEAL.

A prosecutor is forbidden to comment upon an accused's silence in the face of accusation or his failure to testify in order to offer explanations of prejudicial evidence, and the Court of Appeals will presume that prosecutors are familiar with these principles of law.

9. PROSECUTING ATTORNEYS — COMMENTS ON SILENCE OF ACCUSED — HARMLESS ERROR.

An inadvertent comment by a prosecutor on a failure by a defendant to explain an element of his alibi which the defendant was allowed to detail in his opening statement may be deemed harmless where the comment is fleeting, the general thrust of the prosecutor's argument is legitimate, and the trial court appropriately cautions the jury as to the defendant's absolute right not to testify or to prove his innocence in any manner.

10. APPEAL — TRIAL COURT RULINGS — SUPPRESSION HEARINGS — ERROR.

A ruling by a trial court at a suppression hearing will not be overturned on appeal absent clear error.

11. ARREST — WARRANTLESS ARREST — PROBABLE CAUSE.

A warrantless arrest, to be valid, must be based on probable cause to believe that an offense was committed and that the person arrested committed it.

12. ARREST — INVESTIGATORY ARRESTS — PROBABLE CAUSE.

An investigatory arrest is an illegal arrest even where probable cause to arrest a person for a specific crime exists.

13. SEARCHES AND SEIZURES — ILLEGAL ARRESTS — PRIVACY — CONSTITUTIONAL LAW.

A defendant's illegal arrest does not necessarily give him standing to challenge a subsequent search and seizure incident to the arrest or under warrant; a substantive analysis of his Fourth Amendment rights must be examined relative to his legitimate expectation of privacy in the premises searched.

14. SEARCHES AND SEIZURES — ILLEGAL ARRESTS — EVIDENCE.

Evidence seized as a result of a search incident to an illegal arrest where the person arrested has a legitimate expectation of privacy in the premises searched may not be admitted into evidence during trial.

15. SEARCHES AND SEIZURES — SEARCH WARRANTS — PROBABLE CAUSE — ILLEGAL ARRESTS — TAINTED INFORMATION — EVIDENCE — ERROR.

Admission into evidence of items seized from a premises in which a defendant has a legitimate expectation of privacy pursuant to a search warrant issued on the basis of an affidavit which relied on information obtained from a confession tainted by an illegal arrest constitutes error, and such error is not harmless unless it can be said beyond a reasonable doubt that a jury could not be affected by the error.

16. SEARCHES AND SEIZURES — SEARCH WARRANTS — PROBABLE CAUSE — INFORMANTS — AFFIDAVITS.

A tip by a police informant is sufficient to establish the probable cause necessary to issue a search warrant where the search warrant affidavit specifies the underlying facts on which the informant bases his conclusion of wrongdoing and contains information from which a magistrate could conclude that the informant is reliable.

17. ARREST — PROBABLE CAUSE — INFORMANTS.

An anonymous tip may supply a sufficient basis for probable cause to make an arrest where the tip is sufficiently detailed and is corroborated by independent sources.

18. ARREST — PROBABLE CAUSE — INFORMANTS — NECESSARY DETAILS.

An anonymous tip is sufficiently detailed to be a basis for probable cause for an arrest where a defendant's criminal venture is described so as to allow police to infer that they were relying on something more than a casual rumor or an offhand remark heard in a neighborhood bar, and the reliability of the informant is demonstrated upon independent corroboration by the police of many of the details provided by the informant.

19. Criminal Law — Illegal Arrests — Confessions — Constitu-
TIONAL Law.
   The Fourth Amendment prevents illegally-obtained statements
   from being admitted into evidence, and a confession that is
   solely the product of an illegal arrest is inadmissible on consti-
   tutional grounds; for a confession to be admissible, it must be
   determined that there was not a causal connection between the
   tainted arrest and the confession, and it is also necesssary to
   look at the time lapse between the defective arrest and the
   confession, the flagrancy of official misconduct, and any inter-
   vening circumstances.

20. Criminal Law — Courts — Similar-Acts Evidence — Judicial
Discretion — Error.
   The decision as to whether evidence of a defendant's prior convic-
   tions should be admitted cannot be left to the parties in a given
   case; such a decision constitutes an abrogation of judicial
   discretion and is error.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy L. Cronin,* Assistant Prosecuting Attorney, for the people.

*Lander C. McLoyd,* Assistant State Appellate Defender, for defendant on appeal.

Before: Maher, P.J., and Bronson, and T. C. Quinn,* JJ.

Bronson, J. Following a jury trial, defendant was convicted of two counts of armed robbery, contrary to MCL 750.529; MSA 28.797, and one count of possessing a firearm during the commission of a felony, contrary to MCL 750.227b; MSA 28.424(2). He was sentenced to two concurrent terms of from 12 to 20 years imprisonment for the robberies and an additional two-year consecutive

---

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

term for the felony-firearm conviction. Defendant appeals as of right.

Defendant was originally tried with a codefendant, Karl Mix. Following the first trial, Mix was found to be guilty as charged. However, the jury could not agree on a verdict as to defendant. Codefendant Mix is not involved in this appeal but, rather, is pursuing a separate appeal of his own.

The charges in the instant case stem from a robbery of a Richman Brothers Clothing Store in Dearborn, Michigan, on December 23, 1977. Stanley Shernoff, the store manager, testified that two men entered the haberdashery and proceeded to examine various items of clothing. Shernoff described the two individuals as black males; one was tall ("over six foot and weighed over 200, 220 pounds"), and the other was short ("about 5'6", 5'5", something like that"). Shernoff identified defendant as the shorter man.

After being fitted with a suit, the short man went into a dressing room. When he returned, the tall man went into the dressing room. Thereafter, the shorter individual knocked on the dressing room door. At this point, the pair approached the counter, and the man identified as defendant brandished a gun and said, "Freeze". The duo took money from the cash drawer and several items of clothing and then left.

The major issue at trial concerned the identity of defendant as one of the robbers. Although Mr. Shernoff identified defendant in court, at a lineup conducted on January 11, 1978, he had stated that he was not sure that defendant was one of the robbers. David and Richard Wolfe both identified defendant as the shorter robber during the course of trial. David Wolfe, however, conceded that he

had been unable to positively identify defendant at the prior trial which resulted in a hung jury. The prosecution was permitted to read into evidence the prior testimony of Bharat Shah, an unavailable witness, who had identified defendant as one of the robbers at the first trial. The former testimony of Sergeant Edward Sikora, who interviewed Mr. Shah near the time of the robbery, was also read to the jury. Sergeant Sikora stated that Shah had only given him a description of the taller man involved in the robbery. Five other witnesses who were in the store during the robbery could offer no identifications.

The defense presented several witnesses, seeking to establish an alibi. Cheryl Garner stated that she took defendant to a bus station on December 26, 1977, and that he was going to travel to Minnesota. Ms. Garner also indicated that she picked defendant up at the bus station on January 10, 1978. Lukie Ealey testified that defendant stayed with him in Minnesota from December 27, 1977, to January 9, 1978. Celia Bizens, who lived with Ealey, corroborated this testimony.

Other facts will be discussed where relevant to specific issues.

I

The first issue we confront on appeal is whether the trial court erred in admitting evidence of defendant's other crimes on the issue of identity. The similar-acts evidence introduced at trial concerned defendant's involvement in the robbery of the Swank Men's Shop at 15600 Joy Road in Detroit 12 days after the robbery for which defendant was convicted.

. David Bailog, an employee at the Swank Men's

Shop, testified that, on January 9, 1978, he and another employee were preparing to open the store when two men, one tall and one short, approached them and indicated that they wanted to come in. Mr. Bailog told them to come back in a few minutes when the store opened. The pair returned, and the shorter man, identified as defendant, asked to try on a coat. Bailog gave him a size 40 coat, but it was too small. Consequently, Bailog turned around to get him a size 42 coat. At this point, defendant pulled out a short silver gun and said, "This ain't for fun, it's for real". Bailog and the other employee in the store were then taken to the back, tied up, and gagged. The taller man stood guard over them. Various articles of clothing were taken. The tall man also asked Mr. Bailog for his wallet. Bailog gave it to him. However, as he had no money in it, the tall man returned the wallet.

Charles Tolchin, another employee of the Swank Men's Shop, gave testimony corroborating that of Mr. Bailog. Mr. Tolchin indicated that one of the robbers forced him to hand over his wallet and left with it. He identified defendant as the shorter robber and said that he was carrying a "small nickel plated type gun".

Both Bailog and Tolchin admitted that, at a lineup following the robbery, they expressed uncertainty that defendant was involved in the crime. Bailog testified that he had really been sure about his identification at the lineup but did not want to get involved. Both witnesses said that they were positive about their in-court identifications in the instant case. Neither witness described the short robber as having a bad complexion or facial hair, although defendant had an unusually bad complexion and a goatee.

The admission of evidence revealing defendant's other bad acts or crimes is allowable upon a showing of (1) substantial evidence that defendant committed the other acts, (2) special circumstances of the act tending to establish one of the enumerated items in MRE 404(b), which has superseded MCL 768.27; MSA 28.1050,[1] and (3) materiality of the enumerated item to a determination of defendant's guilt of the charged offense. *People v Wilkins,* 82 Mich App 260, 267-268; 266 NW2d 781 (1978), *rev'd on other grounds* 408 Mich 69; 288 NW2d 583 (1980), *People v Bloom,* 93 Mich App 573; 287 NW2d 5 (1979). See also *People v Major,* 407 Mich 394, 398-399; 285 NW2d 660 (1979).

After determining that the other-acts evidence is probative, the trial court must still weigh its probative value against the possibility that unfair prejudice will result to the defendant if it is admitted. MRE 403, *Wilkins, supra,* 270, *People v Ernest Smith,* 87 Mich App 18, 22; 273 NW2d 573 (1978), *People v Oliphant,* 399 Mich 472, 489-490; 250 NW2d 443 (1976).

Defendant earnestly contends that the threshold requirement of the *Wilkins* test—substantial evidence tending to show that defendant committed the other act—was not established in this case. We believe that the prosecution did meet its burden of proof on this requirement.[2] The argument to the contrary rests on the fact that the two witnesses to the Swank Men's Shop robbery had expressed some uncertainty concerning their identification at a lineup following the incident, certain discrepancies in these witnesses' descriptions of the defendant and his actual appearance, and the omission in the descriptions of certain details which defen-

---

[1] *People v Major,* 407 Mich 394, 397, fn 3; 285 NW2d 660 (1979).

[2] See *People v Duncan,* 402 Mich 1, 13-14; 260 NW2d 58 (1977).

dant considers significant. As to the first point, both witnesses stated that they were positive that defendant was one of the Swank Men's Shop robbers at the trial of the instant matter. Furthermore, witness Bailog stated that he feigned uncertainty at the time of the lineup. As to the second point, any variations between the defendant's actual appearance and the witnesses' descriptions were minor. As to the third point, we do not expect witnesses to be able to give total recall of a felon's appearance.

Defendant was tried for the Swank Men's Shop robbery; this trial ended in a hung jury. Nonetheless, this fact does not automatically bar the admission of such evidence.[3] *Oliphant, supra,* 499-500, *People v Bolden,* 92 Mich App 421, 424; 285 NW2d 210 (1979). However, we take this opportunity to express our support for Judge ALLEN's partial concurrence and partial dissent in *People v Bolden,* 98 Mich App 452, 464; 296 NW2d 613 (1980), wherein he writes:

"To the extent that a prior acquittal of the alleged similar act of the defendant reflects on the accuracy of the charge that defendant committed that act, then the defendant should be entitled to show that another jury determined that he did not commit the similar act."

We think the same rationale holds true where defendant was not convicted due to a hung jury.

Defendant also suggests that the other-acts evidence was not sufficiently similar to the circumstances of the charged offense to warrant its introduction. While this is a close question, we disagree. Both robberies occurred at men's clothing stores in

---

[3] Indeed, to his credit, defendant does not argue that the fact that he was not convicted for the robbery of the Swank Men's Shop bars the introduction of evidence showing his involvement in the crime.

the same general area of the Detroit metropolitan area. Both robberies were perpetrated by one tall and one short black male. In both robberies the culprits took not only the store's cash, but goods and the wallets of those who happened to be in the store. In both robberies the shorter culprit, alleged to be defendant, carried a small shiny or silvery gun. There was sufficient similarity in the modi operandi of the robberies to allow the other-acts evidence to be considered by the jury. See, *People v Jackson,* 46 Mich App 764, 772; 208 NW2d 526 (1973), *People v Carter,* 87 Mich App 778, 782; 276 NW2d 493 (1979).

Defendant does not contend that the evidence was not material to the issue of identity. We specifically hold that the similar-acts evidence was material for this purpose.

Defendant also argues that the trial court committed reversible error in not balancing on the record the probative value of the similar-acts evidence against its prejudicial impact. In *Bolden, supra,* 425, one panel of this Court held that where the record is silent it will not be presumed that the lower court did not conduct the required balancing process. The *Bolden* Court further stated that if such a requirement was imposed it should be forthcoming from the Supreme Court, and not this Court. In *People v Golochowicz,* 89 Mich App 57, 60-62; 279 NW2d 576 (1979), another panel of our brethren noted two cases in which the Supreme Court held that reversible error had been committed where the trial court failed to positively identify its discretion to exclude a defendant's prior convictions for impeachment purposes.[4] The *Golochowicz* Court further indicated

[4] *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974), *People v Cherry,* 393 Mich 261; 224 NW2d 286 (1974).

that it could discern no distinction between the use of prior convictions for impeachment and the admissibility of evidence of other similar crimes in regard to this requirement.[5] Nonetheless, the *Golochowicz* Court declined to impose this requirement itself. Subsequent to the *Golochowicz* decision, the Supreme Court amended MRE 609(a) by adding a second paragraph to the first section, requiring the trial court to determine on the record that the probative value of admitting the prior conviction outweighs its prejudicial effect *and* to articulate for the record the factors considered in rendering this decision.[6]

It seems to us, as an *a fortiori* proposition, that, since the Supreme Court has imposed as a condition precedent to the admission of prior convictions for nonsubstantive, *impeachment purposes* the weighing of factors pro and con on the record, the time will come when the Court will also mandate a comparable weighing of factors on the record prior to admitting proofs of other crimes for limited, *substantive purposes.* Like the *Golochowicz* Court, we fail to discern a distinction upon which a greater duty should be imposed on trial judges relative to prior convictions than to similar-acts evidence. Also in accord with the *Golochowicz* Court, however, we decline to mandate this extension of the law ourselves. We are prepared to

[5] Here, the trial judge did in fact recognize his discretion to exclude similar-acts evidence on the record. The controversy centers solely on his failure to weigh the probative value of the evidence against its prejudicial effect on the record.

[6] The relevant addition to MRE 609 provides:

"Rule 609. Impeachment by Evidence of Conviction of Crime.

"(a) (Unchanged.)

"(1) (Unchanged.)

"(2) the court determines that the probative value of admitting this evidence on the issue of credibility outweighs its prejudicial effect and articulates on the record the factors considered in making the determination."

require, however, that if asked by defense counsel or a defendant, the trial judge must explain on the record how he reached the determination that the probative value of the evidence outweighed its prejudicial effect. The trial court in the instant matter was not asked and, thus, did not refuse to explain the rationale behind its determination on the balancing question. Consequently, we find no error. While we have declined to require that trial courts *sua sponte* give their reasons for allowing similar-acts evidence to be admitted on the record, we strongly urge the lower courts to follow MRE 609(a)(2) as a guideline when handling similar-acts problems.

Defendant further asserts that, in any case, the probative value of the similar-acts evidence was outweighed by its prejudicial effect. We disagree. The identity of the defendant as one of the robbers was the critical issue at trial. Defendant presented a vigorous alibi defense. The similar-acts evidence was thus of critical importance in establishing identity. As such, its probative value was tremendous. Naturally, the admission of testimony concerning defendant's other bad acts will always have some prejudicial effect. In the present case, defendant could have minimized this effect by introducing proof that he had not been convicted of the offense. Furthermore, the witnesses to the Swank Men's Shop robbery had given prior inconsistent statements about the incident, giving defendant a substantial opportunity to lessen the impact of the evidence.

The final claim of error relating to the similar-acts testimony involves the court's instructions to the jury concerning the evidence's use. Specifically, defendant objected below and objects now to the judge's statement that, "you have heard evidence

tending to show that the Defendant was guilty of the offense of robbery armed for which he is not on trial". This portion of the instruction, as well as the similar-acts instructions as a whole, was almost a word-for-word rendition of CJI 4:10:01. We find these instructions proper. Basically, defendant's objection to the similar-acts instructions is a mere reiteration of his position that the prosecution failed to introduce "substantial evidence" that defendant committed the other acts.

II

The next problem confronting us on appeal concerns certain remarks made by the prosecutor in his closing argument. Defendant contends that the emphasized portions of the following excerpt from the prosecutor's argument require reversal:

"One thing I want you to look at—and I'm going to be quick. I know I've been up here about ten minutes. Please stay with me. *I'm going to tell you why for real the similar acts testimony is so important.*

"*We had a holdup at Richman's on December 28th. We had a holdup on [sic] Swank's on January 9th. The clothes stolen here and the clothes stolen there end up here on Abington where the Defendant was arrested. And there is also a gun that is similar to what has been described by witnesses in the couch.*

"Well, what about the alibi? The alibi is that on 12-26 he got on a bus, 12-27 arrived in Minnesota, and got back on a bus in Minnesota on the ninth and came back to Detroit on the tenth.

"Now, if I were to cover half of this up and we were justing looking at the Richman case, you would say, 'So what?' But when you see both ends of it, you say, 'Well, look at that, it's like a shield, a prophylactic shield or an umbrella.' The alibi neatly fits both almost to the day.

"Now, isn't that interesting? *Is that just coincidence that the Defendant went up to Minnesota from down here without ever telling you why, went to Minnesota— there is no testimony on that*—and then came back?" (Emphasis added.)

As to the first emphasized portion of the argument, defendant contends that the prosecutor injected error into the proceedings by telling the jury "for real" why the similar-acts evidence was so important. Defendant asserts that the remark implies that the court's instruction explaining the similar-acts evidence's value as going to the question of the culprit's identity was not its major purpose. We disagree. The explanation proffered by the prosecutor clearly reveals that he considered its "for real" value to be its tendency to prove the identity of defendant as the robber. This is precisely the purpose for which the evidence was admitted.

The second claim of improper prosecutorial argument is more troubling. Defendant argues that the second emphasized portion of the excerpt above constitutes an infringement on his right not to testify. We agree. This portion of the prosecutor's argument called upon defendant to explain the evidence. An argument which calls upon defendant to explain something may have the tendency to shift the burden of proof and result in error. *People v Heath,* 80 Mich App 185, 188; 263 NW2d 58 (1977), *United States v Smith,* 500 F2d 293, 298 (CA 6, 1974).

In *People v Robinson,* 386 Mich 551, 562-563; 194 NW2d 709 (1972), the Supreme Court adopted a two-part, harmless-error test. The first inquiry to be made is whether the error is so offensive to the maintenance of the sound judicial process that it may never be considered harmless. The second

question is whether the error was harmless beyond a reasonable doubt.

In *People v Swan,* 56 Mich App 22, 35; 223 NW2d 346 (1974), *lv den* 395 Mich 810 (1975), we said that it would be difficult for us to believe in the future that prosecutors are ignorant of the principle of law which forbids comment upon an accused's silence in the face of accusation.[7] We also stated that, in the future, deliberate violations of this rule might cause us to overturn convictions even where the evidence of guilt is overwhelming.

This principle from *Swan* holds true for violations of the equally well-established legal principle that a prosecutor may not comment on the defendant's failure to take the stand and explain away evidence. It is extremely hard to believe that any prosecutor is not familiar with this principle which has been part of Michigan jurisprudence since before the turn of the century. *People v Lange,* 90 Mich 454, 458-459; 51 NW 534 (1892).

What occurred in this case is just peculiar enough, however, so that we are not convinced that the prosecutor deliberately injected error into the proceedings. Although defendant was represented by counsel, he was allowed to deliver his own opening statement. In his opening remarks, defendant detailed his alibi but, as the prosecutor noted in closing, never explained why he went to Minnesota. Consequently, it was reasonably likely that the prosecutor was thinking of defendant's opening remarks when he made the error complained of. Where an error of this type is inadvertently injected into the proceedings, it may be deemed harmless under the first *Robinson* inquiry.

We are further convinced that the error was harmless beyond a reasonable doubt. The improper

---

[7] See *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973).

portion of the prosecutor's argument was fleeting, and the general thrust of the argument was legitimate. Furthermore, almost immediately after the improper remark was made, the trial court cautioned the jury that a defendant has an absolute right not to testify nor any obligation to prove his innocence in any manner. We find no reasonable possibility that the prosecutor's remark contributed to defendant's conviction.

## III

Following a suppression hearing, the court ruled admissible numerous items of clothing seized from a house on Abington in Detroit. Additionally, the prosecution was allowed to introduce into evidence a gun seized from behind the cushions of a couch at the time of defendant's arrest. Defendant contends that the gun was seized as the result of an illegal arrest and that the warrant issued authorizing the seizure of the clothing was invalid.

Sergeant Leslie Williams testified at the suppression hearing that on January 5, 1978, he received an anonymous phone call from a person who stated that a man named Karl was "knocking off" gas stations on Plymouth Road. The caller further indicated that Karl had "knocked off" a clothing store. The unknown informant called again on January 9, 1978. This time he said that Karl had "hit" another clothing store and that he had been in the hospital with an unrelated gun wound. Furthermore, he indicated that Karl lived on Abington, was a dark, black male, six feet tall, and 170 pounds, that a man name "Shon" was also involved, that one gas station had been robbed four times, and that the robbers were using a tan car.

On January 9th, before the second phone call,

Sergeant Williams had gone to the Swank Men's Shop and received descriptions of the men who had robbed that store. After receiving the second call, Williams discovered that Karl Mix, defendant's cofelon, had been in the Plymouth General Hospital with a gunshot wound. He also discovered that Mix was living at 11431 Abington in Detroit. On January 10, 1978, Williams drove past the Abington address and saw a tan car pull into the garage.

The next day, Sergeant Williams and several officers went to the house on Abington to effect an arrest. They arrived at 8 a.m., and defendant came to the front door. The police stated that they wanted to speak with Karl Mix. Defendant let them in. When Mix came downstairs from his bedroom, both he and defendant were arrested for "investigation of armed robbery". Although defendant told the police his name was Bruce Williams, Jr., and they were looking for a man named "Shon", he was nonetheless arrested. At this point, defendant asked if he could sit down. The officers answered affirmatively but first checked the couch for weapons and found the gun.

After the arrests, Karl Mix admitted his involvement in the robbery of the Richman Brothers Clothing Store in Dearborn. Based on this information and that which had been obtained from the anonymous caller, Sergeant Donald Wood obtained a search warrant. Upon the warrant's execution, he seized many articles of clothing.

Defendant contends that the gun should have been suppressed as having been seized incident to an arrest for which there was no probable cause. Similarly, he argues that the clothing should have been suppressed as having been seized pursuant to an invalid search warrant.

A trial court's ruling at a suppression hearing will not be overturned on appeal unless it is clearly erroneous. *People v Ulrich,* 83 Mich App 19, 21; 268 NW2d 269 (1978), *People v Erskin,* 92 Mich App 630, 642; 285 NW2d 396 (1979).

In order for a warrantless arrest to be valid, there must be probable cause to believe that an offense was committed and that the arrestee committed it. *People v Martin* 94 Mich App 649, 652; 290 NW2d 48 (1980). Here, defendant was arrested for "investigation of robbery". An investigatory arrest is an illegal arrest. When the police arrest a person for investigation of a crime, they are admitting that there is a lack of probable cause to believe that the individual committed the offense. *Martin, supra,* 653, *Brown v Illinois,* 422 US 590; 95 S Ct 2254; 45 L Ed 2d 416 (1975). Even had there existed probable cause to arrest defendant for robbery, since defendant was actually arrested for "investigation of robbery", said arrest would have been illegal. *Martin, supra.*[8]

The fact that defendant was illegally arrested, however, does not necessarily give him the right to challenge the seizure of the silver revolver or the articles of clothing. In *Rakas v Illinois,* 439 US 128; 99 S Ct 421; 58 L Ed 2d 387 (1978),[9] the Supreme Court rejected traditional doctrines of standing vis-à-vis the Fourth Amendment in favor of an approach whereby a substantive analysis of

---

[8] Assuming that defendant had actually been arrested for robbery, the arrest would still have been illegal for want of probable cause. Although the police had the informant's information about Karl Mix, at the time they arrested defendant all they knew was that he was on Mix's premises. There was no more than a mere suspicion that defendant was involved in criminal activity and not probable cause. *People v Falconer,* 76 Mich App 367; 256 NW2d 597 (1977), *lv den* 402 Mich 816 (1977).

[9] *Rehearing denied,* 439 US 1122; 99 S Ct 1035; 59 L Ed 2d 83 (1979).

the rights of the person seeking suppression are examined relative to his legitimate expectation of privacy in the premises searched.[10] In the case *sub judice,* it is unclear what defendant's relationship to the Abington house was. Some testimony suggested defendant lived there; other testimony supports a contrary conclusion. We would have no difficulty in concluding that defendant had a legitimate expectation of privacy from governmental intrusion if, in fact, he along with Mr. Mix was a resident of the premises. Similarly, if the evidence adduced had shown that defendant was a casual visitor who entered the house only seconds prior to the commencement of the search and who left seconds following the search, pursuant to *Rakas, supra,* 142, we would have to conclude that he had no legitimate expectation of privacy in the premises.

The Supreme Court in *Rakas* strives to establish that opinion's essential consistency with previous decisions of the Court. *Rakas* can be interpreted either broadly or narrowly as either greatly restricting a petitioner's ability to assert a violation of his Fourth Amendment rights or as having a much more limited effect. The majority in *Rakas* forthrightly admits that its decision renders no easier the determination to be made where there has been a motion to suppress. *Id.,* 140.[11] In fact,

[10] After *Rakas, supra,* it appeared that the rule of automatic standing from *Jones v United States,* 362 US 257; 80 S Ct 725; 4 L Ed 2d 697 (1960), continued to apply to possessory offenses. See *People v Godwin,* 94 Mich App 286, 288; 288 NW2d 354 (1979). However, in *United States v Salvucci,* — US —; 100 S Ct 2547; 65 L Ed 2d 619 (1980), *Jones* was explicitly overruled.

[11] The dissent in *Rakas* specifically objects to discarding a "bright line" rule—legitimately on the premises—in favor of the majority's test. While we agree with the *Rakas* majority that the legitimately on the premises test does not establish as bright a line as the dissent contends, it most assuredly is easier to apply than the legitimate expectation of privacy test adopted by the Court.

*Rakas* further muddies the waters when suppression of evidence is in issue. See the majority and dissenting opinions in *People v Mack,* 100 Mich App 45; 298 NW2d 657 (1980).

In *Mack,* the Court's majority was of the opinion that, on the facts presented, identical results would be reached under *Rakas* and the old "legitimately on the premises" test of *Jones, supra.* In our opinion, in most cases, the *Rakas* and *Jones* tests will result in identical holdings on the suppression question.

We note that the Michigan Supreme Court has not yet considered *Rakas.* The Michigan Supreme Court has traditionally afforded defendants greater protection against unreasonable searches and seizures than the United States Supreme Court. See, *People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975), *cert den,* 423 US 878; 96 S Ct 152; 46 L Ed 2d 111 (1975) (imposing higher Michigan standard relative to electronic surveillance); *People v Margelis,* 217 Mich 423; 186 NW 488 (1922) (applying the exclusionary rule prior to the time it was mandated by *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 [1961]). In our opinion there exists a fair possibility that our Supreme Court will reject or narrow the applicability of *Rakas* in Michigan as a matter of state constitutional law.

We believe, however, that, even pursuant to *Rakas,* defendant had a legitimate expectation of privacy in the Abington house. The testimony at the suppression hearing establishes at least that defendant had free run of the premises. It was defendant who answered the door when the police came to the house. Defendant also let the police officers into the residence. Sergeant Williams testified that defendant asked "if he could sit down and put his shoes and stockings on and get dressed"

after his arrest. This indicates that defendant either lived or stayed at the house.[12] Either factor cuts in favor of finding a legitimate expectation of privacy in the premises. We also note that *Rakas* involved a search of an automobile, while the instant case involved a search of a private residence. The Supreme Court has recognized that, for purposes of Fourth Amendment protection, automobiles are distinguished from other types of private property. See, *Arkansas v Sanders,* 442 US 753; 99 S Ct 2586; 61 L Ed 2d 235 (1979), and cases cited therein.

The gun which was admitted into evidence was seized incident to defendant's arrest. As this arrest was unlawful, it was erroneous to allow its introduction at trial.

The fact that defendant was illegally arrested, however, does not dispose of the question of whether the items seized pursuant to the search warrant were also inadmissible. In *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964), the Court established a two-prong test for determining if an informant's tip is sufficient to establish probable cause to issue a search warrant: (1) the affidavit must specify the underlying facts on which the informant bases his conclusion of wrongdoing and (2) the affidavit must contain information from which the magistrate could conclude that the informant was reliable.

In *People v Walker,* 401 Mich 572; 259 NW2d 1 (1977), the Michigan Supreme Court held that an anonymous tip may be the basis for probable cause to arrest if the tip is sufficiently detailed and corroborated by independent sources. The Court in

---

[12] In *Mack, supra,* one panel of this Court held that defendant had a reasonable expectation of privacy in the residence even though he was not on the premises at the time of the search and even though the searched dwelling was not his permanent residence.

*Walker* held that defendant's criminal venture was described in sufficient detail so the police could infer that they were relying on "something more substantial than a casual rumor" or "an offhand remark heard at a neighborhood bar" (the first prong from *Aguilar*). *Id.,* 581. With the officers' independent corroboration of many of the details provided by the informant, the *Walker* Court held that the anonymous tipster's reliability was also demonstrated (the second prong from *Aguilar*).

As in *Walker,* the police in this case corroborated many details given by the tipster. We do not believe that *Walker* is controlling, however. In *Walker,* the details of the tip were far more numerous and substantial than is the case here. *The tip concerned detailed evidence of a crime in progress.* From the details of the tip, the police could conclude that the anonymous caller's information was coming from personal knowledge or observation. Compare *Draper v United States,* 358 US 307; 79 S Ct 329; 3 L Ed 2d 327 (1959), on which the *Walker* Court relies in reaching its conclusion that the arrest was valid. In the instant case, the information given by the anonymous informant could well have been the product of rumor or speculation in a neighborhood bar. The tip supplied did not describe a criminal venture in progress. This is significant because it is substantially more likely that an allegation of *past* criminal wrongdoing was learned in an unreliable fashion than the details of a crime in progress. When the tipster identified Mix as the culprit, there were no details supplied which made this crucial information self-verifying. The fact that Mix had been in the hospital, lived on Abington, and drove a tan car were innocuous details. These were not facts

upon which a magistrate or the police could conclude that Mix was involved in the crimes in question. See, *Spinelli v United States,* 393 US 410; 89 S Ct 584; 21 L Ed 2d 637 (1969).

In addition to the anonymous caller's information, the search warrant affidavit relied on Karl Mix's confession to the robbery. In *Martin, supra,* 653-654, we said:

"A confession that is solely the product of an illegal arrest is inadmissible on constitutional grounds. *Wong Sun v United States,* 371 US 471, 491; 83 S Ct 407; 9 L Ed 2d 441 (1963). For the confession to be admitted, it must be determined that there was no causal connection between the tainted arrest and the confession. [*Brown v Illinois,* 422 US 590, 602; 95 S Ct 2254; 45 L Ed 2d 416 (1975)], *People v Mosley (On Remand),* 72 Mich App 289, 293; 249 NW2d 393 (1976). Proof of the giving of *Miranda* warnings merely satisfies threshold Fourth Amendment requirements. *Dunaway v New York,* 442 US 200; 99 S Ct 2248; 60 L Ed 2d 824 (1979). One must also look at the time lapse between the defective arrest and the confession, the flagrancy of official misconduct and any intervening circumstances. *Dunaway, supra, Brown, supra* at 603."

The time span between the illegal arrest of Mix and his statement was approximately one hour. As in *Martin,* the temporal proximity and lack of intervening circumstances between the arrest and confession rendered it the fruit of the poisonous tree. As such, it could not permissibly be used as the basis upon which the search warrant was issued. Having held, above, that defendant had a reasonable expectation of privacy in the residence searched under *Rakas,* the use of Mix's confession as a factor in the issuance of the warrant invaded defendant's rights in the premises as well as Mix's.

Where a constitutional right is invaded, the

error is not harmless unless it can be said beyond a reasonable doubt that the jury verdict was not affected by the error. *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967). Particularly in light of the fact that the jury could reach no verdict following defendant's first trial, we are not convinced that the error was harmless.

## IV

Defendant next argues that the trial court abused its discretion in the handling of motions to suppress evidence of his and a prosecution witness' prior criminal records. Following the motions, the trial court ordered both records suppressed. However, the judge also indicated that defense counsel and the prosecutor could make their own agreement regarding the use of the prior convictions. Thereafter, the attorneys for the parties agreed that both defendant's and the prosecution witness' records could be the subject of examination. The prosecution witness was questioned about his previous convictions, but defendant never took the stand.

Defendant contends that it was error for him to be forced into an agreement with the prosecution whereby he could inquire into a prosecution witness' prior convictions only if the prosecutor could inquire into his prior convictions. In *People v Dennis Johnson,* 85 Mich App 181; 270 NW2d 734 (1978), *lv den* 406 Mich 859 (1979), one panel of this Court held that the trial court abrogated its discretion and committed error by leaving to the parties the decision on whether evidence of prior convictions would be admitted. In *Dennis Johnson,* the trial court specifically stated that either both the defendant's and the chief prosecution witness' criminal record would come in or neither would,

depending on the agreement of the parties. Here, the trial court held that neither would come in unless the parties reached a contrary agreement. In our opinion, the trial court here just as clearly failed to exercise its discretion on the question of the admissibility of evidence of the prior convictions as did the Court in *Dennis Johnson.* The decision was ultimately left to the parties, and this constituted an abrogation of judicial discretion. On retrial, the court must separately rule on the motions to suppress.[13] The decision can in no way be left to the parties.

## V

Defendant lastly contends that the trial court made three evidentiary rulings depriving him of a fair trial. In our opinion, the trial court did not abuse its discretion in rendering any of the rulings in question.

Reversed and remanded.

---

[13] When we say that the motions are to be considered separately, we mean that the judge must not simply allow the defendant's prior criminal convictions to be used if it allows the prosecution witness' record to be utilized. It is possible that in a given case the probative value of admitting evidence of the prior convictions for impeachment purposes will be outweighed by the prejudicial effect on one side but not the other. While specifically disavowing that we intend to dictate the result to be reached by the trial court on remand, we note that the prosecution witness in question in this case is not the chief witness. This would go to the extent of the prejudicial effect to the prosecution's case by allowing the witness' prior convictions to be used and should be considered on remand.