LOCKETT v CITY OF DETROIT POLICE DEPARTMENT

Docket No. 91373. Submitted October 14, 1987, at Detroit. Decided
     November 16, 1987.

In December of 1977, fifty persons riding a DOT bus in the City of
     Detroit were robbed at gunpoint. Witnesses gave police a de-
     scription of the robber, a description which was very general
     and could have fit a large number of people in the city. Two
     weeks later, the police received an anonymous letter indicating
     that a Detroit police officer named Charles Lockett committed
     the robbery. Lockett had been suspended from the police force
     on the basis of suspected involvement in an unrelated armed
     robbery. Lockett fit the general description of the bus robber
     except for two details. He had a scar on his face, which was not
     mentioned in the description of the robber, and he did not have
     thick lips, which the robber was said to have. Police officers
     went to Lockett's home, forcibly entered the house and arrested
     Lockett, all without having a warrant. Lockett was placed in
     seven lineups, but was positively identified in only one. Lockett
     was charged with eleven counts of armed robbery and, follow-
     ing a preliminary examination, was bound over for trial on
     four of the counts. The Recorder's Court of Detroit, Harold
     Hood, J., quashed the information, finding that the magistrate
     abused his discretion in binding Lockett over for trial. Lockett
     then filed suit against officers Eugene MacBride and John
     Fabian and the City of Detroit Police Department in the 36th
     District Court seeking damages for false arrest, false imprison-
     ment, malicious prosecution, and violation of his civil rights.
     The court, John A. Murphy, J., directed a verdict in favor of

REFERENCES

Am Jur 2d, Public Officers and Employees §§ 358 et seq.; 406.

Am Jur 2d, Searches and Seizures §§ 41-45, 65, 120-126.

Am Jur 2d, Sheriffs, Police, and Constables §§ 90, 92, 158, 159, 200,
     201, 209 et seq.

Validity and construction of statute authorizing or requiring gov-
     ernmental unit to indemnify public officer or employee for liabil-
     ity arising out of performance of public duties. 71 ALR3d 90.

Municipal liability for personal injuries resulting from police offi-
     cer's use of excessive force in performance of duty. 88 ALR2d
     1330.

plaintiff on the false arrest, false imprisonment, and violation of civil rights claims, directed a verdict in favor of defendants on the malicious prosecution claim, and submitted the question of damages to the jury. The jury awarded plaintiff $50,000 in actual damages but denied punitive damages on the civil rights claim. The Wayne Circuit Court, R. J. Colombo, Jr., J., affirmed. Defendants appealed by leave granted.

The Court of Appeals *held:*

1. The trial court correctly concluded that the officers lacked probable cause to arrest plaintiff.

2. The trial court correctly concluded that defendants Mac-Bride and Fabian were not entitled to immunity under 42 USC 1983.

3. The City of Detroit Police Department is governmentally immune from liability for the torts of Officers MacBride and Fabian.

4. The judgment of the circuit court is reversed with respect to defendant city and the case is remanded to the district court with instructions to enter a judgment of no cause of action in favor of the city on the basis of governmental immunity. The decision of the circuit court is affirmed with respect to defendants MacBride and Fabian.

Affirmed in part, reversed in part and remanded.

1. CRIMINAL LAW — SEARCH WARRANTS — PROBABLE CAUSE — INFORMANTS.

There must be evidence of the reliability and credibility of the informant and the information provided in determining probable cause for the issuance of a search warrant based upon an informant's tip.

2. CIVIL RIGHTS — ARREST — POLICE OFFICERS — IMMUNITY.

A police officer is not entitled to immunity from tort liability for violation of an individual's civil rights where the officer unlawfully entered the individual's home and arrested him without a warrant to do so, the unlawfulness of the officer's action was apparent, and a reasonable officer would understand that such action violates a constitutional right (42 USC 1983).

3. TORTS — GOVERNMENTAL ENTITIES — VICARIOUS LIABILITY.

A governmental entity may be vicariously liable for the torts of its employees only where the employees have been acting in the course of their employment, within the scope of their authority, and have committed torts while engaged in an activity which is nongovernmental or proprietary in nature or which falls within a statutory exception.

*Becker & Van Cleef, P.C.* (by *Frank G. Becker*), for plaintiff.

*Donald Pailen,* Corporation Counsel, and *William Woodward* and *Joanne Stafford,* Assistant Corporation Counsel, for defendants.

Before: Wahls, P.J., and Sawyer and C. W. Simon, Jr.,* JJ.

Per Curiam. Defendants appeal by leave granted from a judgment of the district court in favor of plaintiff on his claims of false arrest, false imprisonment and violation of civil rights under 42 USC 1983. The trial court had directed a verdict in favor of plaintiff on those claims, while directing a verdict in favor of defendants on plaintiff's claim of malicious prosecution. The question of damages was submitted to the jury, which returned a verdict in plaintiff's favor in the amount of $50,000 in actual damages and no award for punitive damages on the civil rights claim. Defendants appealed to the Wayne Circuit Court, which affirmed.

Briefly, the facts of the case are as follows. In December of 1977, fifty persons riding a DOT bus in the City of Detroit were robbed at gunpoint. The investigating officers interviewed those witnesses who remained at the crime scene and created a description of the robber based on those features upon which a majority of the witnesses agreed. The description was of a black male, in his twenties, 165 pounds, dark complexion, glasses, with a beard and mustache, thick lipped, and wearing a black sweatshirt with hood, a black peacoat, light blue denim pants, black shoes and carrying a blue steel revolver, possibly .357 caliber. Police Sgt.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Michael Dowd of the Armed Robbery Unit testified that the description was very general and could have fit a large number of people in the City of Detroit. Given the differences in the witnesses' perception, Dowd suggested that the suspect could range in height from 5'5" to 6'2" and in weight from 150 pounds to 210 pounds.

Approximately two weeks after the robbery, the Armed Robbery Unit received an anonymous letter which seemed to indicate that a police officer named Charles Lockett committed the robbery. The letter was a combination of newsprint, printing and cursive writing. The investigating officers directed an inquiry to Internal Affairs, which indicated that plaintiff had been suspended from the police force based upon suspected involvement in an unrelated armed robbery. The officers also learned that plaintiff had recently been wearing a beard and mustache and that he was 5'11" tall and weighed 180 pounds. Furthermore, the interrogation record created when plaintiff was questioned about the prior armed robbery indicated that he had a one-inch scar on his left cheek (which had not been mentioned by any of the witnesses to the bus robbery). Finally, although the interrogation record had a place to indicate that the suspect has "thick lips," the box was not checked.

Based upon this information, officers from the Armed Robbery Unit went to plaintiff's home and forcibly entered the house without a warrant and placed him under arrest, again without a warrant. Plaintiff was placed in seven lineups. He was positively identified in the first lineup, but none of the other witnesses were able to make a positive identification in the subsequent lineups. A few did indicate that plaintiff "sort of" looked like the robber.

Plaintiff was subsequently charged with eleven counts of armed robbery. At the conclusion of the preliminary examination, the magistrate bound plaintiff over for trial on four of the eleven counts. However, Recorder's Court Judge Harold Hood quashed the information, finding that the magistrate abused his discretion in binding plaintiff over for trial.

The instant civil action followed. Following plaintiff's proofs, the trial court directed a verdict in defendants' favor on the malicious prosecution charge. Before submitting the case to the jury, the court directed a verdict in plaintiff's favor on the false arrest and imprisonment charges, based upon its conclusion that, as a matter of law, there was no probable cause for plaintiff's arrest. A verdict was also directed in plaintiff's favor on the civil rights claim. Thus, only the question of damages was submitted to the jury.

Finally, we note that, during trial in the instant case, Sgt. Dowd testified that an arrest warrant was not obtained because the police officers did not believe that they had sufficient probable cause to obtain a warrant from a judge, or even to have the prosecutor's office be willing to seek a warrant. However, they apparently believed that they had sufficient probable cause to make an arrest without a warrant.

I

Defendants first argue that the trial court clearly erred in concluding that the officers lacked probable cause to arrest plaintiff. We disagree.

First, we note that Sgt. Dowd testified that the police officers did not even seek a warrant because they did not believe that they had sufficient evidence to convince either the prosecutor or a judge

that there was probable cause to arrest plaintiff. This by itself speaks volumes. We cannot imagine how defendants can reasonably expect the court to believe that there was probable cause to make an arrest without a warrant when the officers themselves did not believe there was probable cause to obtain a warrant for such arrest.

Of course, the officers may have merely been mistaken that probable cause did not exist to obtain a warrant. Thus, the crucial question in this case is whether probable cause did exist despite the officers' beliefs to the contrary.[1] The key to this issue is what reliance, if any, could the investigating officers place on the anonymous note sent to them.

Our consideration of this issue begins with the cases of *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964), and *Spinelli v United States,* 393 US 410; 89 S Ct 584; 21 L Ed 2d 637 (1969). In these cases, the Supreme Court established the requirement that, in determining probable cause for the issuance of a search warrant based upon an informant's tip, there must be evidence of the reliability and credibility of the informant and the information provided. The past credibility of an informant may be used to establish the reliability of the current tip. See *United States v Harris,* 403 US 573; 91 S Ct 2075; 29 L Ed 2d 723 (1971). The *Aguilar-Spinelli* criteria were specifically applied by the Michigan Supreme Court in the determination of probable cause based upon an informant's tip in *People v Walker,* 401 Mich 572, 580-581; 259 NW2d 1 (1977).

---

[1] Indeed, an interesting question does present itself here. Specifically, is there any civil liability of a police officer who performs a lawful arrest while possessing the belief that it is unlawful? That question need not be addressed here since we conclude that the arrest was unlawful in the case at bar. Accordingly, we can leave the above question to the collective consideration of law professors and their hapless students.

Turning to the case at bar, we can find no indicia of reliability in the tip received by the investigating officers. The note was anonymous and merely stated that the author was on the bus at the time of the robbery and recognized plaintiff as the robber on the basis of having gone to school with him. However, there was nothing in the note to establish the veracity of the claim. It did not describe any events of the robbery to lend credence to the assertion that the author of the note was on the bus at the time. Simply put, the note could have been sent by any person familiar with plaintiff and who had read of the robbery in the newspaper.

Furthermore, the anonymous tip was not buttressed by any information gathered by the officers after their suspicion fell on plaintiff following the receipt of the note. The only other information the officers had upon which to base their belief of plaintiff's involvement was the description of the perpetrator by the witnesses. However, that description was insufficient to establish probable cause because of its generality and the fact that it differed somewhat from what plaintiff actually looked like. That is, the description provided by the witnesses was so general that, as one witness testified, it would fit a large number of black males living in the City of Detroit. Further, the description described the robber as having "thick lips," which plaintiff does not possess, and it did not indicate that the robber had a facial scar, which plaintiff does possess. The existence of plaintiff's scar and the fact that he did not have thick lips were known to the officers before the arrest.

For the reasons stated above, we conclude that the officers were correct in the initial determination that there was a lack of probable cause to believe that plaintiff was involved in the robbery.

Accordingly, the trial court correctly determined that defendant officers were without lawful authority to make an arrest without a warrant and, therefore, correctly directed a verdict in plaintiff's favor.[2]

Before moving to the next issue, we wish to briefly consider defendants' argument based upon the case of *McCreary v Sigler,* 406 F2d 1264 (CA 8, 1969). Defendants correctly point out that information provided by a victim or a witness is inherently more reliable than that provided by an ordinary police informant, even if made anonymously. However, defendants' argument fails because the informant's statement that he or she was a passenger on the bus at the time of the robbery lacks reliability. It is insufficient that the note sent to the police merely states that the author was a witness to the crime. Since nothing in the note supports the assertion that the author was actually on the bus, the police were not justified in relying on the unsubstantiated assertion to that effect.

## II

Defendants' next argument is similarly without merit. Defendants argue that the trial court erred in determining that the individual officers were not entitled to immunity under 42 USC 1983. We disagree.

The determination whether the individual offi-

---

[2] We recognize that the Supreme Court, subsequent to plaintiff's arrest, did adopt a more flexible approach to the area of the determination of probable cause based upon an informant's tip. See *Illinois v Gates,* 462 US 213; 103 S Ct 2317; 76 L Ed 2d 527 (1983). However, we applied the *Aguilar-Spinelli* criteria to the instant case since that was the relevant law at the time of plaintiff's arrest. In any event, we would point out that we do not believe that probable cause could be established even under the more liberal requirements of *Gates* since the anonymous tip lacked any indicia of reliability.

cers may be held personally liable for their unlawful action turns on the objective legal reasonableness of their actions. *Harlow v Fitzgerald,* 457 US 800; 102 S Ct 2727; 73 L Ed 2d 396 (1982). The reasonableness of an official's conduct should be measured by reference to clearly established laws, so that if a legal principle is not clearly established at a given time, the official could not reasonably be expected to know that the law would forbid his conduct. *Id.* In determining whether a body of law is clearly established, the court should not consider the very general body of law, but the more particularized and thus more relevant issue. *Anderson v Creighton,* 483 US —; 107 S Ct 3034; 97 L Ed 2d 523 (1987). That does not mean that an official will be protected by immunity unless that very action has been previously held unlawful, but it does mean that, in light of the existing law, the unlawfulness must be apparent and a reasonable official would understand that his action violates a constitutional right. *Id.* Furthermore, the individual defendant's belief about the lawfulness of his conduct is irrelevant. *Id.*

Turning to the case at bar, the *Aguilar-Spinelli* test was in use at the time of plaintiff's arrest to determine the existence of probable cause. While there was some flux in the area of the law concerning the criteria to be used in determining the reliability of an informant's tip, it was clear then, as it is now, that there must be some evidence of reliability and credibility to the informant's tip. Although the *Illinois v Gates,* 462 US 213; 103 S Ct 2317; 76 L Ed 2d 527 (1983), decision may have broadened the methods which may be used to establish reliability and credibility, that requirement has itself remained constant.[3]

---

[3] We are not faced with the debate recently waged by our Supreme

As discussed above, there was no basis for placing any reliance or credence on the tip. Nothing in the tip itself or in the surrounding circumstances gave the officers any reason to believe that the tip was accurate. Indeed the fact that the state of probable cause law was sufficiently stable at the time of plaintiff's arrest so as to allow the officers to know that their actions were unlawful is reflected in the fact that the officers chose not to seek a warrant because they themselves believed that they lacked sufficient evidence to obtain a warrant. Nothing in the state of the law in 1978 would lead a reasonable police officer to believe that he could make an arrest without a warrant based upon facts which he himself did not believe would be sufficient to obtain an arrest warrant.

We recognize that the law cannot expect a police officer in the field to be able to make split-second, exacting judgments on complicated legal issues. If lawyers and judges, learned in the law, cannot come to agreement after afforded the opportunity of a leisurely and scholarly review of the finer points of constitutional law, we cannot hold police officers liable for a wrong judgment made as events unfold, particularly since police officers are not normally provided the same training in the law as judges and lawyers. However, this cannot excuse the officers where their conduct clearly violates established legal principles, or where they are afforded the opportunity to obtain legal sanction for their conduct (i.e., a warrant).

In the case at bar, defendant officers had the opportunity to seek a warrant to justify their

Court in *People v Sherbine,* 421 Mich 502; 364 NW2d 658 (1984), over which test should be followed as a matter of Michigan law in finding whether a sufficient showing is presented to support the issuance of a warrant. Suffice it to say that even if Michigan were to follow the more liberal test announced in *Gates,* the police officers in this case lacked probable cause to secure a warrant.

conduct, but did not do so.[4] Furthermore, nothing in the state of the law as it existed in 1978 could possibly justify their belief that they had probable cause to arrest plaintiff. Simply put, no reasonable officer could believe that he was justified in arresting plaintiff without a warrant. Accordingly, the trial court correctly concluded that defendants MacBride and Fabian were not entitled to immunity under 42 USC 1983.

III

Defendants' final argument, that they are immune from tort liability for false arrest and imprisonment under the state governmental immunity act, has some merit, at least with respect to defendant city.

First, we must determine whether the circuit court was correct in concluding that the issue of governmental immunity was not properly preserved for appeal since it had not been raised in the trial court. We agree with the circuit court that the individual defendants had not raised the issue in the trial court and, therefore, the issue is not properly preserved for appellate review. However, with respect to defendant city, it did raise the issue in its responsive pleadings and, therefore, we believe that it sufficiently preserved the issue.

In turning to the question whether defendant city is immune from liability, we conclude that it is. For a governmental entity to be vicariously

---

[4] We note that nothing in this case suggests that there existed any exigent circumstances which necessitated an immediate arrest without taking the time to seek a warrant. Indeed, the arrest occurred over two weeks after the robbery and there is no indication that the suspect was about to dispose of evidence of the crime or flee the jurisdiction. Thus, the only reason defendants apparently had for not seeking the warrant was their belief that no magistrate would issue one.

liable for the torts of one of its employees, the employee must have been acting in the course of his employment, within the scope of his authority, and must have committed a tort while engaged in an activity which is nongovernmental or proprietary in nature or which falls within a statutory exception. *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567, 591-592; 363 NW2d 641 (1984).

In the case at bar, two of the three prongs are not met. While the officers were acting in the course of their employment by the city, they exceeded the scope of their authority in making the arrest. At the risk of stating the obvious, police officers only possess the authority to make lawful arrests. Where they make an unlawful arrest (i.e., an arrest without probable cause), they have exceeded the scope of their authority. Second, the torts in the case at bar were committed while the officers were engaged in a governmental activity, i.e., the investigation of a crime and the arresting of a suspect. *Ross, supra* at 657-661. Accordingly, defendant city is not vicariously liable for the torts of the individual defendants.[5]

The judgment of the circuit court is reversed with respect to defendant city and the case is remanded to the district court with instructions to enter a judgment of no cause of action in favor of the city on the basis of governmental immunity. The decision of the circuit court is affirmed with respect to defendants MacBride and Fabian. Plaintiff may tax costs against defendants MacBride and Fabian; no costs may be taxed against or by defendant city.

[5] Although the issue is not properly before us, we do note that the fact that the individual defendants were acting outside the scope of their authority would defeat a defense of governmental immunity even if properly raised. *Ross, supra* at 592.